FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ SEP 2 8 2009 ★

BROOKLYN OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------- x

NICHOLAS MORGAN,                                          x

          Plaintiff,                                          x

    -against-                                          x

THE COUNTY OF NASSAU, a municipal entity;   x
NASSAU COUNTY COMMISSIONER OF
POLICE LAWRENCE W. MULVEY; NASSAU           x
COUNTY POLICE OFFICER "MICHAEL"
QUAGLIANO; NASSAU COUNTY POLICE             x
LIEUTENANT NICHOLAS PANDOLFO,
COMMANDING OFFICER, MOUNTED UNIT;           x
NASSAU COUNTY POLICE OFFICER
CHRISTOPHER P. MAKER, SHIELD NO. 1578,      x
individually and in their official capacities; and
JOHN DOES 1-10, Nassau County Police        x
Officers, Supervisors and/or Commanders,
individually and in their official capacities,  x

          Defendants.                                         x

-------------------------------------------------------------- x

**COMPLAINT**

**JURY TRIAL DEMANDED**

09 CV ____ **09    4168**

**ECF CASE**

**SPATT, J.**

**TOMLINSON, M.J.**

Plaintiff NICHOLAS MORGAN, by his attorneys BELDOCK LEVINE & HOFFMAN LLP, as and for his complaint alleges as follows:

**PRELIMINARY STATEMENT**

1.     This is a civil rights action in which the plaintiff NICHOLAS MORGAN seeks relief for defendants' violation, under color of state law, of his rights, privileges and immunities secured by the Civil Rights Act of 1871, 42 U.S.C. §1983, the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, and the Constitution and laws of the State of New York, on or about October 15, 2008.

2.      Defendants, THE COUNTY OF NASSAU, a municipal entity; NASSAU COUNTY COMMISSIONER OF POLICE LAWRENCE W. MULVEY; NASSAU COUNTY POLICE OFFICER "MICHAEL" QUAGLIANO; NASSAU COUNTY POLICE LIEUTENANT NICHOLAS PANDOLFO, COMMANDING OFFICER, MOUNTED UNIT; NASSAU COUNTY POLICE OFFICER CHRISTOPHER P. MAKER, SHIELD NO. 1578, individually and in their official capacities; and JOHN DOES 1-10, Nassau County Police Officers, Supervisors and/or Commanders, individually and in their official capacities, exact number which is unknown at this time, jointly and severally, did cause plaintiff NICHOLAS MORGAN to be subject to, *inter alia*, deprivation of rights of free speech assembly and association, excessive and unreasonable force, assault and battery, negligence, false arrest, and false imprisonment causing him financial and serious physical and mental injury.

2.      Plaintiff seeks compensatory and punitive damages, declaratory relief, an award of attorneys' fees and costs, and such other and further relief as the Court deems proper.

## JURISDICTION

3.      Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(a) (3) and (4), as this action seeks redress for the violation of plaintiff's constitutional and civil rights. Jurisdiction is also conferred by 28 U.S.C. §§ 1332 as plaintiff is a resident of West Virginia and defendants are residents of New York, and the matter in controversy exceeds the sum or value of $75,000.

4.      Plaintiff's claim for declaratory relief is authorized by 28 §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

5.      Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28

U.S.C. § 1367(a), over any and all state constitutional and state law claims that are so related to

the claims within the original jurisdiction of this Court that they form part of the same case or

controversy.

### VENUE

6.      Venue is proper in the United States District Court for the Eastern District of New

York pursuant to 28 U.S.C. § 1391(b)(2) because this is the judicial district in which the events

giving rise to plaintiff's claims occurred.

### JURY DEMAND

7.      Plaintiff demands trial by jury on each and every one of his claims.

### PARTIES

8.      Plaintiff NICHOLAS MORGAN ("Morgan") is and has been at all times relevant

to this complaint a citizen of the United States and a resident of the state of West Virginia.

9.      Defendant COUNTY OF NASSAU (the "County") is a duly constituted

municipal entity created and authorized under the laws of the State of New York.  The County is

authorized by law to maintain a police department which acts as its agent in the area of law

enforcement and for which it is ultimately responsible.  The County assumes the risks incidental

to the maintenance of a police force and the employment of police officers, including but not

limited to its maintenance of a mounted unit.  At all relevant times, the County acted through its

agency, the Nassau County Police Department ("NCPD") to commit the acts alleged in this

Complaint and was responsible for such acts.

3

10.     Defendant LAWRENCE W. MULVEY is and was, at all times relevant to this complaint, Commissioner of the NCPD and a final policy maker for purposes of the NCPD's policies, practices and customs.

11.     Defendant "MICHAEL" QUAGLIANO ("Quagliano") is or was, at all times relevant to this complaint, a police officer employed by the NCPD in the Mounted Unit, a specialized unit of the NCPD in which police officers perform many of their duties while riding horses (the "Mounted Unit").

12.     Defendant LIEUTENANT NICHOLAS PANDOLFO ("Pandolfo") is or was at all times relevant to this complaint, a police lieutenant employed by the NCPD and the commanding officer for the Mounted Unit.

13.     Defendant CHRISTOPHER P. MAKER, Shield No. 1578 ("Maker"), is or was, at all times relevant to this complaint, a police officer employed by the NCPD.

14.     Defendants JOHN DOES, are, or were at all times relevant to this complaint, NCPD police officers, supervisors, and/or commanders. These JOHN DOE defendants include individuals who assisted and/or conspired to and/or acted in concert and/or did engage in the violations of plaintiff's rights described herein, or who failed to protect the plaintiff from violations of his constitutional rights. The JOHN DOE defendants include individuals responsible for the training, supervising and command of the Mounted Unit.

15.     Defendants NASSAU COUNTY COMMISSIONER OF POLICE LAWRENCE W. MULVEY, NASSAU COUNTY POLICE OFFICER "MICHAEL" QUAGLIANO, NASSAU COUNTY POLICE LIEUTENTANT NICHOLAS PANDOLFO, NASSAU COUNTY POLICE OFFICER CHRISTOPER P. MAKER, Shield NO. 1578, and JOHN DOES (collectively, "the

4

individual defendants") are, or at all times relevant to the complaint, were, employees, agents, servants, and/or officers of defendant COUNTY OF NASSAU and the NCPD.

16.     At all times relevant herein, each of the individual defendants acted under color of law in the course and scope of his or her duties and functions as an agent, employee, servant and/or officer of the County and/or NCPD in engaging in the conduct described herein.

17.     At all times relevant herein, the individual defendants have acted for and on behalf of the County and/or the NCPD, and incidental to the lawful pursuit of their duties as officers, agents, employees, and/or servants of the County and NCPD.

18.     At all times relevant herein, the individual defendants violated clearly established constitutional standards under the First, Fourth, Fifth and Fourteenth Amendments of the United States Constitution and the Constitution of the State of New York which a reasonable police officer and/or public official under his or her respective circumstances would have known.

## COMPLIANCE WITH GENERAL MUNICIPAL LAW

19.     Plaintiff served a notice of claim upon defendant County within 90 days of the events giving rise to plaintiff's claims and have otherwise complied with the statutory requirements of the General Municipal Law of the State of New York.

20.     Although more than 30 days have elapsed since service of the notices of claim, defendant County has failed and/or neglected to adjust or pay such claims.

21.     This action is being filed within a year and 90 days of the events giving rise to plaintiff's claims.

## STATEMENT OF FACTS

5

22.     Nicholas Morgan was born in 1983 and raised in Ellenbroo, West Virginia. Before he had even graduated from high school Morgan enlisted as a reservist with the United States Army.  In November, 2003, he received  active duty orders  and was deployed to active duty in December, 2003.

23.     Between February 2004 and February 2005, Morgan served with the United States military in Baghdad, Iraq, as a heavy construction equipment operator.

24.     In July 2006, Morgan was discharged from the U.S. Army Reserves.

25.     In October 2008, Morgan was 24 years old.  He was a member of a group called the Iraq Veterans Against the War ("IVAW").  IVAW is a group of current and former servicemen who oppose the U.S. military action in Iraq.

26.     On October 15, 2008, Hofstra University in Hempstead, Nassau County, New York hosted the third televised presidential debate in which then-Senators Obama and McCain participated.

27.     IVAW organized a peaceful demonstration outside of the entrance gates to Hofstra University.   The entrance gates are located on Hempstead Turnpike.  Members of other organizations participated.

28.     One purpose of the demonstration was to try to pose a question to each of the presidential candidates.  To that end, IVAW organizers of the demonstration informed the NCPD and some of its police officers of this purpose prior to the demonstration.  In addition, CBS, which moderated the debate, had been informed by letter of IVAW's request that the questions be asked of the participating candidates, and of some demonstrators' intention to commit civil disobedience if the questions were not going to be asked of the candidates.

6

29.     Prior to the IVAW demonstration, at least two demonstration organizers had met with and advised NCPD police officers about the plan for nonviolent civil disobedience and they had assured NCPD police that the demonstrators intended to cooperate with the police.

30.     During the evening of October 15, 2008, Morgan attended the IVAW demonstration near the entrance of Hofstra University with several friends and acquaintances.   It was not his intent to engage in, nor did he engage in, any form of civil disobedience prior to his being assaulted by the defendants.

31.     Approximately 200 to 300 demonstrators attended the demonstration, most of whom were not veterans or members of IVAW.

32.     Morgan wore a desert camouflage uniform issued by the United States Army at the demonstration.

33.     The area outside of Hofstra University near Hempstead Turnpike was policed by officers of the NCPD.   Some NCPD officers were on foot, while other NCPD officers were mounted on police horses. Some NCPD police officers wore riot gear.

34.     During the demonstration, at approximately 7 p.m., some veterans committed civil disobedience by approaching a police line and requesting permission to pass through so they could deliver questions to the candidates.   Upon being refused entrance, some of these veterans were arrested by uniformed NCPD police officers.

35.     Morgan was not among the veterans who were initially arrested. He did not engage, nor was it ever his intent to engage, in any form of civil disobedience at any time that evening, before or during the demonstration.   During the demonstration, Morgan never

unlawfully crossed, nor did he attempt to cross, any barriers or barricades set up or formed by the NCPD.

36.    Following these peaceful acts of civil disobedience by members of IVAW, the NCPD began to forcefully and aggressively move the rest of the crowd of demonstrators away from the entrance to Hofstra University.

37.    Demonstrators were forced by NCPD police officers' orders and actions to move backwards onto a sidewalk area that was too crowded for the demonstrators to move into or stand safely.

38.    At the direction of one or more NCPD police commanders at the scene, both NCPD riot police and Mounted Unit officers moved forcefully against the demonstrators.

39.    Among the aggressive actions taken by the NCPD Mounted Unit police officers was to spin their mounts into the assembled demonstrators.  The NCPD Mounted Unit horses were improperly used as weapons against the demonstrators.  NCPD Mounted Unit officers used their horses to hit demonstrators.

40.    Morgan was at the front of a group of lawful demonstrators with other veterans who were pushed onto the sidewalk.   While he was on the sidewalk officers from the Mounted Unit, including defendant Quagliano, were spinning their horses into the crowd and backing their horses into the crowd.  The horse riden by Quagliano that was swinging hit Morgan.  Other demonstrators were also forced onto the sidewalk and suffered injuries as a result of the excessive and unreasonable use of force by the defendants, including being physically injured by the horses.

41.     While the plaintiff was standing on the sidewalk he saw NCPD police officers grab Geoff Millard, a demonstrator, without justification or cause, and pull him off the sidewalk.

42.     Shortly thereafter, Morgan himself was knocked or pushed to the ground by one of more NCPD officers.  At the point he was knocked to the ground Morgan was standing on the sidewalk, not blocking vehicular traffic, and complying with all police orders that had been given by the defendants.

43.     At no time did Morgan disobey any police orders.

44.     While he was on the ground the horse ridden by defendant Quagliano stepped on the head of Morgan, causing him severe and lasting permanent injury.

45.     NCPD officers, including defendant John Doe supervisors, could have but failed to prevent Quagliano's assault on the plaintiff.

46.     After being trampled by defendant Quagliano's horse, Morgan lay unconscious on the ground bleeding from the head injuries he suffered.

47.     Despite being in this condition, the defendants, including the defendant John Doe police officers, did not provide Morgan with immediate medical care and attempted to prevent other demonstrators from providing medical assistance to Morgan.

48.     At some point, two or more NCPD JOHN DOE police officers dragged Morgan across the street.  He was bleeding from his head.  At some point Morgan was also handcuffed by NCPD officers.

49.     After being placed in police custody, Morgan was taken to a bus by NCPD JOHN DOES police officers where other arrestees were being held.  Seeing the condition of Morgan, some of these demanded that NCPD police officers provide Morgan with medical attention.

9

50.    One of the Nassau County police officer JOHN DOEs falsely told the demonstrator arrestees that Morgan had refused medical attention.

51.    Shortly thereafter, an NCPD police officer asked Morgan if he wanted to go to the hospital and he responded affirmatively.

52.    Morgan was then removed from the bus where he had been taken following his arrest and transported by NCPD officers to the Nassau University Medical Center. While at the Nassau University Medical Center Morgan was handcuffed to a bed. An NCPD officer remained with Morgan while he was at the hospital.

53.    At the hospital, Morgan received some stitches. His ribs and head were scanned. Amoxicillin and Motrin were prescribed for his injuries. An appointment with the oral-maxilo facial surgery department was scheduled for a subsequent date.

54.    Following the receipt of this medical treatment Morgan was taken by NCPD police officers to a Nassau County police station. At the police station, Morgan was handcuffed for several hours to a bench. Other demonstration arrestees were also chained to benches at the precinct.

55.    While in the precinct Morgan was harassed, mocked and taunted by NCPD officers. Other demonstration arrestees were also harassed, mocked and taunted by officers. For example, NCPD police officers told Morgan and other arrestees that they were "cowards" and "traitors".

56.    At some point, defendant Maker completed a desk appearance ticket ("DAT") for Morgan. The DAT stated that it was issued at 19:20 on October 15, 2008. The DAT falsely stated that at 7:20 p.m. at California Avenue and Hempstead Turnpike Morgan had "walked

around a police barricade into a vehicular traffic lane and ignore [sic] police orders to return to

the pedestrian side of the barricade causing a hazardous condition." This entire statement was

false and known to be so by Maker and the officers who were consulted concerning the charges

to be brought against Morgan.

57.     Morgan was eventually given a DAT with an appearance date for November 10,

2008. He was released from NCPD custody at approximately 2 a.m. on October 16, 2008.

58.     Approximately ten veterans and five civilians at the demonstration were arrested

and detained by the NCPD during the course of the IVAW demonstration.

59.     On or about November 10, 2008, Morgan and the other persons arrested at the

October 15, 2008 demonstration appeared at the Nassau County Criminal Court for their court

appearances.  Morgan was charged with and arraigned on disorderly conduct.

60.     All the charges against Morgan and the other demonstrator arrestees were later

dismissed.

61.     As a direct and proximate result of the defendants' actions, Morgan was prevented

from fully participating in the demonstration on October 15, 2008.

62.     At no time did Morgan engage in any criminal activity, disobey and lawful order

of the police or engage in any other conduct which would have justified the physical force used

against him and others or justified the arrest, detention and imprisonment of Morgan.

63.     As a direct and proximate result of the conduct of the defendants on October 15,

2008, Morgan suffered severe and permanent physical injuries including, *inter alia*, his

cheekbone was crushed, his lower orbital was shattered, his nose was broken, he had a large knot

on the back of his head, and he was severely bruised, particularly near his ribs, as well as emotional distress and mental anguish.

64.     At no time did Morgan obstruct any police function, resist arrest or engage in any conduct that could reasonably be construed as endangering or threatening any police officer or other individual.

65.     The use of force by Quagliano against Morgan was objectively unreasonable in light of the circumstances then and there prevailing, and as such constituted excessive force against plaintiff's person, causing him injury.

66.     On information and belief, one reason for the NCPD's actions against the demonstrators, including Morgan, was to disrupt the protest and deprive the demonstrators, including Morgan, of their rights of free speech, association and assembly at an event of national political importance regarding a war that was central to U.S. foreign policy, less than a month before the presidential election was to be held.

67.     Subsequent to the events of October 15, 2008, Morgan received additional medical care for injuries because of defendants' action and inactions.  He attended several medical appointments and treatments, including but not limited to surgery to repair his orbital cavity and courses of antibiotics.

68.     As a direct and proximate result of the conduct of the defendants, jointly and severally, on October 15, 2008, Morgan has suffered financial losses and incurred financial expenses.

69.     Morgan continues to receive medical care and suffers adverse medical consequences related to the events of October 15, 2008, including blurry vision, an oozing eye and facial pain.

70.     In response to questions form the media, Lieutenant Kevin Smith of the NCPD's Public Information Office claimed that the NCPD officers at the demonstration responded appropriately, and that "one of the defendants collided with a police horse. . . . c'mon, who do you think is gonna win?"

71.     As a direct and proximate result of the actions and conduct of the defendants described above, plaintiff Morgan suffered the deprivation of his federal and state constitutional rights and state law rights; physical and psychological injuries; pain and suffering; emotional distress; damage to reputation; loss and damage to certain personal property; and medical and legal expenses.

### FIRST CAUSE OF ACTION
(Constitutional Violations - 42 U.S.C. § 1983)

72.     Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

73.     Defendants, under color of state law, subjected plaintiff to the foregoing acts and omissions without due process of law and in violation of 42 U.S.C. § 1983, thereby depriving plaintiff of his rights, privileges and immunities secured by the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, including, without limitation, deprivation of the following constitutional rights:

a.     freedom to engage in protected speech;

13

b.      freedom of assembly;

c.      freedom of association;

d.      freedom to petition for redress of grievances;

e.      freedom from unreasonable seizure of his person, including excessive force;

f.      freedom from arrest without probable cause;

g.      freedom from false imprisonment, that being wrongful detention without good faith, reasonable suspicion or legal justification, and of which wrongful detention plaintiff was aware and to which plaintiff did not consent;

h.      freedom from abuse of process;

i.      freedom from deprivation of liberty without due process of law; and

j.      equal protection, privileges and immunities under the laws.

74.      As a direct and proximate result of defendants' deprivation of plaintiff's constitutional rights the plaintiff Nicholas Morgan suffered damages herein before alleged.

## SECOND CAUSE OF ACTION
(Failure to Intervene - Fourth Amendment - 42 U.S.C. § 1983)

75.      Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

76.      At the time of the incidents in question in this lawsuit, members of the NCPD had an affirmative duty to assess the constitutionality of interactions between their fellow members of

service and civilians, and to intervene where they observe another member of the NCPD

employing unjustified and excessive force against a civilian or falsely arresting a civilian.

77.     Defendants JOHN DOES were present on the evening of October 15, 2008 on or

near California Avenue and Hempstead Turnpike and witnessed the following wrongful actions

by defendants, all of whom unlawfully interfered with Morgan's exercise of his First Amendment

and other rights and further:

By QUAGLIANO:

a.      Used his horse as a weapon against the demonstrators, including Morgan;

b.      Failed to assist Morgan after Quagliano.s horse struck and trampled him;

By JOHN DOE Mounted Unit incident commander:

a.      Gave orders to NCPD Mounted Unit to use horses against the demonstrators,

        including Morgan;

b.      Gave orders to Quagliano to use his horse against Morgan;

By JOHN DOES police officers:

a.      Interfered with efforts of demonstrators to provide Morgan with medical

        assistance;

b.      Used excessive and unreasonable force against Morgan and other demonstrators;

By MAKER:

a.      Falsely arrested Morgan without probable cause;

b.      Falsely detained Morgan without probable cause or justification;

78.     Defendants Quagliano's and JOHN DOE's use of force against demonstrators,

including Morgan, was unreasonable, excessive and unjustified under the circumstances yet

15

defendants failed to take any action or make any effort to intervene, halt or protect plaintiff from being physically brutalized by the Mounted Unit officers, including Quagliano, at JOHN DOE's instruction.

79.     Defendant Maker's arrest of plaintiff Morgan was clearly without probable cause or other legal justification and in retaliation for his having participated in the demonstration, and protested the American military engagement in Iraq, yet defendant JOHN DOES failed to take any action or make any effort to intervene, halt or protect plaintiff from being unlawfully and wrongfully arrested.

80.     Defendants' violation of plaintiff's constitutional rights by failing to intervene in defendants Quagliano's and JOHN DOE's clearly unconstitutional use of force and Maker's unconstitutional arrest of plaintiff resulted in the injuries and damages set forth above.

### THIRD CAUSE OF ACTION
(Individual Supervisory Liability - 42 U.S.C. § 1983)

81.     Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

82.     Individual defendants Pandolfo and Supervisor JOHN DOES were, at all relevant times, supervisory personnel in the NCPD, with oversight responsibility for the training, instruction and supervision of the named and unnamed individual police officer defendants who deprived plaintiff of his federal constitutional rights.

83.     The individual supervisory defendants knew or should have known that the named and unnamed individual police officer defendants failed to intervene in Quagliano's use of

clearly excessive force against plaintiff or in Maker's clearly unlawful arrest of plaintiff, and in their deprivation of Morgan's rights, including his First Amendment rights.

84.     Defendant Pandolfo, as the commanding officer of the NCPD Mounted Unit, failed to train, instruct and supervise NCPD Mounted Unit officers regarding lawful techniques for the use of Mounted Unit horses.  In particular, defendant Pandolfo failed to train NCPD Mounted Unit officers that absent exigent circumstances or an emergency, Mounted Unit horses could not lawfully be used against demonstrators as instruments of crowd control or force.

85.     The individual supervisor defendants knew or should have known that the named and/or unnamed individual police officer defendants Maker was conducting an unreasonable and retaliatory seizure and false arrest of plaintiff Morgan, depriving him of his due process of law.

86.     On information and belief, the individual supervisor defendants were personally involved in either ordering, or failing to take preventative and remedial measures to guard against, plaintiff's constitutional deprivations.  The supervisory defendants knew, or in the exercise of due diligence, should have known that the actions taken against plaintiff by the named and unnamed individual police officer defendants was likely to occur.

87.     The failure of the individual supervisor defendants to train, supervise and/or discipline the named and unnamed individual police officer defendants with respect to the constitutional rights of civilians amounted to gross negligence, deliberate indifference or intentional misconduct which directly and proximately caused the injuries and damages to plaintiff set forth above.

## **FOURTH CAUSE OF ACTION**
(*Monell* Claim - 42 U.S.C. § 1983)

88.     Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

89.     All of the acts and omissions by the named and unnamed individual police officer defendants described above with regard to excessive force by the use of the Mounted Unit horses were carried out pursuant to overlapping policies and practices of the COUNTY OF NASSAU which were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the defendant County and its agency, the NCPD.

90.     Defendant County and the NCPD, by their policy-making agents, servants and employees, authorized, sanctioned and/or ratified the individual police defendants' wrongful acts; and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue.

91.     The actions of the individual police defendants resulted from and were taken pursuant to the *de facto* policies and/or well-settled and widespread customs and practices of the County, which are implemented by members of the NCPD.  The relevant policies, customs and practices with regard to the use of excessive force against Morgan are that NCPD Mounted Units police officers and their horses are permitted to be used as weapons to exert force against demonstrators participating in public demonstrations as a means to suppress the demonstration and exert unlawful control over the demonstrators, even when there are no exigent circumstances or an emergency.  The  use of police horses against participants in a lawful demonstration when no emergency or exigent circumstances exist is per se unconstitutional.

18

92.     The NCPD, with the knowledge, approval and encouragement of Commissioner of Police Mulvey, fails to properly train and supervise officers concerning the First Amendment rights of demonstrators to express their political opinions and to observe and protest police misconduct without suffering retaliatory use of force by NCPD Mounted Unit officers such as Quagliano.

93.     The existence of the foregoing unlawful *de facto* policies and/or well-settled and widespread customs and practices is known to, encouraged and/or condoned by supervisory and policy-making officers and officials of the NCPD and the County, including, without limitation defendant Commissioner of Police Mulvey and Pandolfo.

94.     Despite knowledge of such unlawful *de facto* policies, practices and/or customs, these supervisory and policy-making officers and officials of the NCPD and the County, including defendant Commissioner of Police Mulvey and Pandolfo, have not taken steps to terminate these policies, practices and/or customs, and do not properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanction and ratify these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effect of said policies, practices and/or customs upon the constitutional rights of persons in Nassau County.

95.     The aforementioned County policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers within the NCPD Mounted Unit are evidenced by the NCPD police misconduct detailed herein.

96.     The plaintiff's injuries were a direct and proximate result of the defendant County and its agency, the NCPD's, wrongful *de facto* policies and/or well-settled and widespread

19

customs and practices and of the knowing and repeated failure of the defendant County and the NCPD to properly supervise and train police officers in the Mounted Unit with regard to crowd control techniques.

97.     Defendant County knew or should have known that the acts alleged herein would deprive plaintiff of his rights, in violation of the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution and Article 1, §§ 6, 8, 11, and 12 of the Constitution of the State of New York.

98.     The defendant County is directly liable and responsible for the acts of the individual police defendants because it repeatedly and knowingly failed to properly supervise, train, and instruct them to require compliance with the constitutions and laws of the State of New York and the United States.

## FIFTH CAUSE OF ACTION
(New York State Constitutional Violations)

99.     Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

100.     Such conduct breached the protections guaranteed to plaintiff by the New York State Constitution, Article I, §§ 6, 8, 11, and 12, including his rights of:

a.     freedom to engage in protected speech;

b.     freedom of assembly;

c.     freedom of association;

d.     freedom to petition for redress of grievances;

e.     freedom from unreasonable seizure of his person, including excessive force;

20

f.     freedom from arrest without probable cause;

g.     freedom from false imprisonment, that being wrongful detention without good faith, reasonable suspicion or legal justification, and of which wrongful detention plaintiff was aware and to which plaintiff did not consent;

h.     freedom from abuse of process;

i.     freedom from deprivation of liberty without due process of law; and

j.     equal protection, privileges and immunities under the laws.

101.    Defendants' deprivation of plaintiff's rights under the New York State Constitution resulted in the injuries and damages set forth above.

## SIXTH CAUSE OF ACTION
### (False Arrest)

102.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

103.    Acting under color of law, defendant Maker unlawfully caused, ordered, approved and/or knowingly failed to prevent plaintiff's arrest without probable cause or other legal justification.

104.    The individual defendants committed the foregoing acts intentionally, willfully and with malicious disregard for plaintiff's rights, resulting in the injuries and damages set forth above, and are therefore liable for punitive damages.

## SEVENTH CAUSE OF ACTION
### (False Imprisonment)

105.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

106.    Acting under color of law, individual defendants unlawfully caused, ordered, approved and/or knowingly failed to prevent plaintiff's wrongful detention, thereby depriving him of his liberty without good faith, reasonable suspicion or other legal justification.

107.    For almost all of the relevant time, plaintiff was conscious of his confinement, and at all relevant times, plaintiff did not consent to his confinement.

108.    The individual defendants committed the foregoing acts intentionally, willfully and with malicious disregard for plaintiff's rights, resulting in the injuries and damages set forth above, and are therefore liable for punitive damages.

## EIGHTH CAUSE OF ACTION
(Assault and Battery)

109.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

110.    Defendants Quagliano and/or JOHN DOES without just cause, willfully and maliciously touched plaintiff without plaintiff's authorization and used physical force on plaintiff, causing plaintiff to suffer physical and emotional injuries.

111.    Defendants committed the foregoing acts intentionally, willfully and with malicious disregard for plaintiff's rights and are therefore liable for punitive damages.

## NINTH CAUSE OF ACTION
(Intentional Infliction of Emotional Distress)

112.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

22

113.     Defendants by their aforementioned acts, did intentionally, willfully, and knowingly cause plaintiff to suffer mental and emotional distress, pain and suffering, and damage to name and reputation.

114.     Defendants committed the foregoing acts intentionally, willfully and with malicious disregard for plaintiff's rights and are therefore liable for punitive damages.

### TENTH CAUSE OF ACTION
(Negligent Infliction of Emotional Distress)

115.     Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

116.     The individual defendants, by their aforementioned acts, did negligently cause plaintiff to suffer mental and emotional distress, pain and suffering, and damage to name and reputation.

### ELEVENTH CAUSE OF ACTION
(Negligence of the Individual Defendants)

117.     Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

118.     The individual defendants, by their aforementioned acts, negligently failed to use due care in the performance of their duties in that they, among other negligent acts:

    a.     failed to perform their duties as a reasonably prudent and careful police officer or supervisor would have done under similar circumstances; and/or

    b.     carelessly and recklessly used force against plaintiff and seized and detained plaintiff without a warrant or probable cause; and/or

23

      c.      carelessly and recklessly failed to intervene in the unlawful actions taken against plaintiff resulting in his injury, unlawful arrest, detention and prosecution.

119.    The negligent actions of the individual defendants directly and proximately caused plaintiff's injuries and damages set forth above.

**TWELFTH CAUSE OF ACTION**
(Respondeat Superior Against Nassau County)

120.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs if fully set forth herein.

121.    Defendant county is liable for the actions of the individual defendants under the doctrine of *respondeat superior*.

**JURY DEMAND**

122.    Plaintiff demands trial by jury in this action.

**WHEREFORE**, plaintiff demands the following relief jointly and severally against all defendants:

(a)    a declaration that defendants violated plaintiff's federal and state civil rights;

(b)    a declaratory judgment that the use of horses by NCPD police officers against demonstrators as a means of crowd control when no emergency or exigent circumstances exist is unconstitutional as a matter of law;

(c )    an order requiring the NCPD to institute training of its Mounted Unit as to the proper constitutional standard for the use of the NCPD Mounted Unit horses as a

means of crowd control and to implement such standards in the operations of the
NCPD Mounted Unit;

(d)     compensatory damages for the injuries suffered by plaintiff by reason of

defendants' unlawful and unjustified conduct, in an amount just and reasonable

and in conformity with the evidence at trial in an amount not less than $75,000;

(e)     punitive damages against the individual defendants assessed to deter such

intentional and reckless deviations from well-settled constitutional standards to

the extent allowable by law;

(f)     attorneys' fees;

(g)     the costs and disbursements of this action; and

(h)     such other and further relief as appears just and proper.

Dated:      New York, New York
            September 25, 2009


Jonathan C. Moore (jmoore@blhny.com)
Vera M. Scanlon (vscanlon@blhny.com)

BELDOCK, LEVINE & HOFFMAN LLP
99 Park Avenue, Suite 1600
New York, New York 10016
(212) 490-0400

*Attorneys for the Plaintiff*

25