**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x

NICHOLAS MORGAN,                                    x

                    Plaintiff,                        x        09-CV-4168(ADS)(AKT)

    -against-                                        x

THE COUNTY OF NASSAU, a municipal entity;   x
NASSAU COUNTY COMMISSIONER OF
POLICE LAWRENCE W. MULVEY; NASSAU           x
COUNTY POLICE OFFICER "MICHAEL"
QUAGLIANO; NASSAU COUNTY POLICE             x
LIEUTENANT NICHOLAS PANDOLFO,
COMMANDING OFFICER, MOUNTED UNIT;           x
NASSAU COUNTY POLICE OFFICER
CHRISTOPHER P. MAKER, SHIELD NO. 1578,      x
individually and in their official capacities; and
JOHN DOES 1-10, Nassau County Police        x
Officers, Supervisors and/or Commanders,
individually and in their official capacities,     x

                  Defendants.                       x

---------------------------------------------------------------x

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Jonathan C. Moore
Vera M. Scanlon
BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, Suite 1600
New York, New York 10016
(212) 490-0400

## TABLE OF CONTENTS

Page(s)

Table of Authorities ............................................................................................ iii

Preliminary Statement .......................................................................................... 1

Argument .............................................................................................................. 2

I.  The complaint meets the pleading standard, and defendants'
    motion must be denied ............................................................................... 2

II. Plaintiff states a viable excessive force claim under the
    Fourth Amendment ..................................................................................... 3

    A.  Plaintiff's excessive force claim is viable under the
        Fourth Amendment ......................................................................... 3

    B.  Assaulting Plaintiff with horse violated the Fourth
        Amendment ..................................................................................... 4

    C.  If, arguendo, the Fourteenth Amendment is applicable
        to defendants' use of excessive force, Plaintiff has
        stated a claim ................................................................................. 8

    D.  For the same reasons, Plaintiff states a valid claim for
        intentional infliction of emotional distress ................................... 9

    E.  Defendant Quagliano's actions were intentional ........................... 10

III. Defendants' false arrest of Plaintiff violated his Fourth
     Amendment rights ..................................................................................... 11

IV. Defendants violated Plaintiff's First Amendment rights. ........................ 14

V.  Defendants were deliberately indifferent to Plaintiff's
    medical needs. ........................................................................................... 17

VI. The County is a proper defendant. ........................................................... 19

VII. Commissioner Mulvey, Lt. Pandolfo and P.O. Maher are
     proper defendants. .................................................................................... 23

i

VIII.   Plaintiff has standing for injunctive relief and a declaratory
        judgment ...................................................................................................24

IX.     Plaintiff states valid state constitutional claims................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                 Page(s)

Abdell v. City of N.Y.,
2009 U.S. Dist. LEXIS 42719 (S.D.N.Y. May 5, 2009)................................................13

Albright v. Oliver,
510 U.S. 266 (1994)........................................................................................................3

Amnesty Am. v. Town of West Hartford,
361 F.3d 113 (2d Cir. 2004)..........................................................................................20

Ashcroft v. Iqbal,
--U.S.--,
129 S. Ct. 1937 (2009)....................................................................................................2

Bd. of County Comm'rs of Bryan County v. Brown,
520 U.S. 397 (1997)................................................................................................19, 20

Bell Atlantic Corp. v. Twombly,
550 U.S. 544,
127 S. Ct. 1955 (2007)....................................................................................................2

Bennett v. Hendrix,
423 F.3d 1247 (11th Cir. 2005) ....................................................................................17

Brewer v. City of Napa,
210 F.3d 1093 (9th Cir. 2000) ........................................................................................6

Bryant v. City of N.Y.,
404 F.3d 128 (2d Cir. 2005)..........................................................................................13

Buck v. City of Albuquerque,
549 F.3d 1269 (10th Cir. 2008) ......................................................................................5

Cal v. Hodari D.,
499 U.S. 621 (1991)........................................................................................................3

City of St. Louis v. Praprotnik,
485 U.S. 112 (1988)......................................................................................................19

Dellums v. Powell,
566 F.2d 167 (D.C. Cir. 1977)................................................................................14, 15

iii

Edwards v. S.C.,
372 U.S. 229 (1963)................................................................14

Estate of Morris v. Dapolito,
297 F. Supp. 2d 680 (S.D.N.Y. 2004)..........................................17

Fidler v. City of Indianapolis,
428 F. Supp. 2d 857 (S.D. Ind. 2006)............................................6

Gagliardi v. Village of Pawling,
18 F.3d 188 (2d Cir. 1994)........................................................14

Genia v. Parker,
2007 U.S. Dist. LEXIS 19700 (E.D.N.Y. Mar. 20, 2007)..................13

Goldstein v. Pataki,
516 F.3d 50 (2d Cir. 2008)..........................................................2

Graham v. Connor,
490 U.S. 386 (1989)...........................................................4, 6, 20

Hamilton v. City of N.Y.,
2009 U.S. Dist. LEXIS 63432 (E.D.N.Y. July 23, 2009)...................7

Hathaway v. Coughlin,
37 F.3d 63 (2d Cir. 1994)..........................................................19

Hemphill v. Schott,
141 F.3d 412 (2d Cir. 1998)........................................................9

Houston v. Hill,
482 U.S. 451 (1987).................................................................14

Iqbal v. Hasty,
490 F.3d 143 (2d Cir. 2007)........................................................2

Jackson v. N.Y.S.,
381 F. Supp. 2d 80 (N.D.N.Y. 2005)...........................................17

Johnson v. Newburgh Enlarged Sch. Dist.,
239 F.3d 246 (2d Cir. 2001)....................................................9, 10

iv

Lamb v. City of Decatur,
947 F. Supp. 1261 (C.D. Ill. 1996) ...................................................................15

Logsdon v. Hains,
492 F.3d 334 (6th Cir. 2007) ...........................................................................15

Malay v. City of Syracuse,
638 F. Supp. 2d 303 (N.D.N.Y. 2009) ..............................................................24

Marquez v. City of Albuquerque,
399 F.3d 1216 (10th Cir. 2005) ..........................................................................6

Mason v. Hamilton County,
13 F. Supp. 2d 829 (S.D. Ind. 1998) ...................................................................6

Maxwell v. City of N.Y.,
380 F.3d 106 (2d Cir. 2004) ...............................................................................7

McClellan v. Smith,
439 F.3d 137 (2d Cir. 2006) .............................................................................14

McEnery v. City of N.Y.,
2006 U.S. Dist. LEXIS 53793 (S.D.N.Y. Aug. 3, 2006) ...............................5, 7

Meese v. Keene,
481 U.S. 465 (1987) ..........................................................................................24

Metro. Council, Inc. v. Safir,
99 F. Supp. 2d 438 (S.D.N.Y. 2000) .................................................................12

Monell v. N.Y.C. Dep't of Social Servs.,
436 U.S. 658 (1978) ..........................................................................................19

NAACP v. Claiborne Hardware Co.,
458 U.S. 886 (1982) ..........................................................................................16

Okin v. Vill. of Cornwall-on-Hudson Police Dep't,
577 F.3d 415 (2d Cir. 2009) .......................................................................19, 20

Olivieri v. Ward,
613 F. Supp. 616 (S.D.N.Y. 1985)
vacated on other grounds, 766 F.2d 690 (2d Cir. 1985) ..................................15

v

Papineau v. Parmley,
465 F.3d 46 (2d Cir. 2006)..................................................................15, 16

Pembaur v. City of Cincinnati,
475 U.S. 469 (1986)..........................................................................19, 21

People ex rel. Arcara v. Cloud Books,
510 N.Y.S.2d 844 (N.Y. 1986)................................................................25

People v. Barrett,
821 N.Y.S.2d 416 (N.Y. City Crim. Ct. 2006) ..........................................12

People v. Carcel,
165 N.Y.S.2d 113 (N.Y. 1957) ...............................................................12

People v. Pearl,
321 N.Y.S.2d 986 (N.Y. Sup. 1971)........................................................12

Posr v. Court Officer Shield #207,
180 F.3d 409 (2d Cir. 1999)...................................................................13

Pouillon v. City of Owosso,
206 F.3d 711 (6th Cir. 2000) ................................................................15

Priester v. City of Riviera Beach, Fla.,
208 F.3d 919 (11th Cir. 2000) ................................................................6

Provost v. City of Newburgh,
262 F.3d 146 (2d Cir. 2001)...................................................................14

Revere v. Mass. Gen. Hosp.,
463 U.S. 239 (1983)............................................................................17

Roberts v. Phillips,
2009 U.S. Dist. LEXIS 97281 (S.D.N.Y. Sep't 29, 2009) ............................8

Robison v. Via,
821 F.2d 913 (2d Cir. 1987)....................................................................7

Romano v. Howarth,
998 F.2d 101 (2d Cir. 1993)....................................................................7

Stauber v. City of N.Y.,
2004 WL 1593870 (S.D.N.Y. July 14, 2004) ...................................................14

Stephenson v. Doe,
332 F.3d 68 (2d Cir. 2003).................................................................................4

Tenn. v. Garner,
471 U.S. 1 (1985)........................................................................................4, 5, 11

Time Square Books, Inc. v. City of Rochester,
645 N.Y.S.2d 951 (4th Dep't 1996) ..................................................................25

United Yellow Cab Drivers Ass'n, Inc. v. Safir,
1998 WL 274295 (S.D.N.Y. May 27, 1998) ....................................................14

Vathekan v. Prince George's Co.,
154 F.3d 173 (4th Cir. 1998) .............................................................................6

Watkins v. City of Oakland,
145 F.3d 1087 (9th Cir. 1998) ...........................................................................6

Webster v. City of N.Y.,
333 F. Supp. 2d 184 (S.D.N.Y. 2004).............................................................14

Weyant v. Okst,
101 F.3d 845 (2d Cir. 1996)...............................................................15, 16, 18

Zellner v. Summerlin,
494 F.3d 344 (2d Cir. 2007)...........................................................................12

**Constitution and Statutes**

First Amendment to the United States Constitution .............................................. passim

Fourth Amendment to the United States Constitution ........................................... passim

Fourteenth Amendment to the United States Constitution ..................................... passim

N.Y. Penal Law Sec. 240.20 ....................................................................................11

## PRELIMINARY STATEMENT

Plaintiff Nicholas Morgan ("Plaintiff"), by his attorneys, respectfully submits this memorandum of law in opposition to defendants' motion to dismiss and requests that the motion be denied in its entirety because a) under either the Fourth Amendment or the Fourteenth Amendment to the United States Constitution, defendants' use of force in hitting Plaintiff and stepping on Plaintiff's head with a horse was unconstitutional and gives rise to a cause of action; b) defendants violated Plaintiff's Fourth Amendment rights because they lacked probable cause to arrest him; c) defendants violated Plaintiff's First Amendment rights by hitting and stepping on him with a horse, then arresting him, so that he could not participate in the lawful demonstration; d) defendants failed to provide Plaintiff with adequate medical care; e) defendant Nassau County (the "County") is liable for Plaintiff's injuries, in part because the County developed, coordinated, approved and implemented a security plan for the October 15, 2008 presidential debate at which defendants injured and arrested Plaintiff, and approved and/or ratified the defective training, policies, practices and procedures of the Nassau County Police Department ("NCPD") Mounted Unit; f) the individual NCPD officers responsible for policies, procedures and practices as well as their own individual conduct are proper defendants; g) Plaintiff has standing to seek injunctive relief; and h) Plaintiff states valid state law claims.

Defendants' motion is based in part on a too-parsed view of the Complaint, rather than the entire Complaint, and in part on an alleged lack of specificity in the Complaint. Without conceding any merit to either of those arguments, but in order to limit the disputed issues, Plaintiff submits herewith a draft proposed amended Complaint ("Com.") and requests that the Court grant leave to serve and file it with an amended summons. The significant amendments to

the Complaint include: a) additional details about the October 15, 2008 debate, b) identification of one of the John Doe defendants as NCPD Chief of Patrol Karen O'Callaghan, c) statements of generally accepted police practices with regard to using a mounted unit to police a demonstration, and d) deletion of the negligent infliction of emotional distress claim and equal protection claim. Plaintiff respectfully refers the Court to the proposed Amended Complaint (or alternatively, the Complaint) for a statement of the relevant facts, which give defendants adequate notice of Plaintiff's claims.

## ARGUMENT

I.     **The Complaint meets the pleading standard, and defendants' motion must be denied.**

A motion to dismiss pursuant to FRCP 12(b)(6) may not be granted so long as the complaint includes "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, --U.S.--, 129 S. Ct. 1937, 1949 (2009) (citation omitted). This "plausibility standard" does not require a heightened pleading standard for civil rights claims. See Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (rev'd on other grounds, Ashcroft,--U.S.--, 129 S. Ct. at 1949). The plaintiff is required, "at a bare minimum, . . . [to] provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" Goldstein v. Pataki, 516 F.3d 50, 56 -57 (2d Cir. 2008) (citations omitted). Plaintiff's Complaint and proposed Amended Complaint meet and exceed this standard.

2

II.     **Plaintiff states a viable excessive force claim under the Fourth Amendment.**

    A.     **Plaintiff's excessive force claim is viable under the Fourth Amendment.**

Defendants inconsistently argue that the Fourteenth Amendment, rather than the Fourth Amendment, applies because Plaintiff was not under arrest when defendants' horse hit him, but they then argue that Plaintiff was legitimately arrested immediately following the horse attack. Compare Defendants' Memorandum of Law ("Mem.") at 5-8 with id. 11-13.  In Albright v. Oliver, 510 U.S. 266, 289 n.2 (1994) (citations omitted), the Court rejected defendants' view, and held that for an excessive force claim, analysis under both the Fourteenth Amendment and the Fourth Amendment is unnecessary, in part because they would lead to the same result, and held that the Due Process Clause analysis would be redundant.

Defendants' error is based in part on the fact that they do not see their unlawful conduct as a continuous act or event.  When examined, the conduct in the Complaint clearly pleads a proper Fourth Amendment claim.  The Supreme Court has stated:

> The word 'seizure' readily bears the meaning of a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful. . . . An arrest requires either physical force (as described above) or, where that is absent, submission to the assertion of authority.

Cal v. Hodari D., 499 U.S. 621, 626 (1991).  Applying this law, the County's use of the horse against Plaintiff in the course of his arrest was an unlawful Fourth Amendment "seizure" because defendants twice hit Plaintiff with the horse, knocked him unconscious to the ground, and seized control of his person.  Amended Complaint ("Com.") ¶¶ 40, 42, 44, 46-48.

The Supreme Court stated in <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989) (footnote omitted), that where police use force in effectuating a seizure,

> [we] hold that all claims that law enforcement officers have used excessive force--deadly or not--in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

Given that Plaintiff was "seized", the Fourth Amendment, not the Fourteenth Amendment, governs Plaintiff's excessive force claim.

### B.  Assaulting Plaintiff with a horse violated the Fourth Amendment.

We address the Fourth Amendment because it gives rise to Plaintiff's excessive force claim, which defendants seek to dismiss.  <u>See Graham</u>, 490 U.S. at 388, 391-95.  "It is well established that 'use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness.'" <u>Stephenson v. Doe</u>, 332 F.3d 68, 77 (2d Cir. 2003). The reasonableness question is whether the officers' actions were "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.  <u>See Graham</u>, 490 U.S. at 397.  As pleaded, Com. ¶¶ 35, 40, 62, defendants lacked probable cause to believe that Plaintiff, who was participating in a lawful and peaceful demonstration, had committed a crime.  There was no probable cause for an arrest and no warrant against Plaintiff, and thus no lawful basis to use any force against him.  <u>See Tenn. v. Garner</u>, 471 U.S. 1, 7 (1985).

4

A claim of excessive police force in violation of the Fourth Amendment requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.  Police may use deadly force "if necessary to prevent escape, and if, where feasible, some warning has been given." Garner, 471 U.S. at 11-12.

At least two courts have held that the use of a horse as an instrument of excessive force against a demonstrator may violate the Fourth Amendment.  In Buck v. City of Albuquerque, 549 F.3d 1269, 1274 (10th Cir. 2008), the Tenth Circuit affirmed the denial of summary judgment on qualified immunity grounds where the police used horses against a demonstrator at an anti-war rally at a university.  In Buck, a plaintiff, "who [] did not resist arrest or attempt to flee, was hit repeatedly by an officer's horse, sprayed with pepper spray, pinned between two horse-mounted officers, kicked in the back, and shaken violently by the strap of his shoulder bag." Id.  The Tenth Circuit affirmed that there was sufficient evidence to prove that the defendant police may have violated the plaintiff's Fourth Amendment (and First Amendment) rights.  The Court held that "[v]iewing the factors favorably toward [plaintiff], we again agree with the district court's conclusion that a jury could consider the alleged constitutional deprivation to be unreasonable." Id. at 1290.

In McEnery v. City of N.Y., 2006 U.S. Dist. LEXIS 53793, at *11-*12 (S.D.N.Y. Aug. 3, 2006) (internal citations omitted), the district court affirmed a report and recommendation denying summary judgment on federal and state excessive force and false arrest claims arising from police conduct at an anti-Iraq-war rally.  In McEnery, the plaintiff "specifically recounts

5

that the horses 'charged into the crowd,' the crowd of which he was a part, shortly before describing the manner in which he was pinned up against the window by the horse." The Court continued: "As such, a reasonable jury plainly could conclude that it was objectively unreasonable to subject Plaintiff to the force to which he has testified. Additionally, . . . Plaintiff has provided sufficient evidence of pain and bruising to demonstrate that Defendants inflicted more than minimal harm." Id. at *29.  Other cases have also held that the use of animals such as dogs as a weapon or means of force can violate the Fourth Amendment. See Marquez v. City of Albuquerque, 399 F.3d 1216, 1221 (10th Cir. 2005); Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 924 (11th Cir. 2000); Vathekan v. Prince George's Co., 154 F.3d 173, 177-79 (4th Cir. 1998); Watkins v. City of Oakland, 145 F.3d 1087, 1092 (9th Cir. 1998);  Fidler v. City of Indianapolis, 428 F. Supp. 2d 857, 862 (S.D. Ind. 2006); Mason v. Hamilton County, 13 F. Supp. 2d 829, 836 (S.D. Ind. 1998); cf. Brewer v. City of Napa, 210 F.3d 1093, 1097 (9th Cir. 2000).

The Complaint is clear that the defendants, particularly defendant Quagliano, struck Plaintiff multiple times with a police mount although Plaintiff was not engaged in any unlawful activity, resisting arrest, escaping or threatening any officer or third party with injury.  See Com. ¶¶ 36a, 39-44, 62, 64, 65.  As none of the Graham factors was present at the demonstration, Com. ¶¶ 35, 36a, 40, 62, and stepping on Plaintiff's head with a horse constituted potentially deadly force, defendants had no right to use such force to effectuate Plaintiff's arrest, which was objectively unreasonable and excessive in light of the circumstances.

Despite Plaintiff's traumatic head injury which required surgery, Com. ¶¶ 44, 46, 48, 49a, 53, 63, 67, 68, defendants nonetheless claim that Plaintiff did not suffer a serious injury from at least one of defendants' instances of hitting him.  Mem. at 7-8.  This argument must be rejected.

6

The focus of a Fourth Amendment analysis is on the nature and extent of the alleged force used and not on the seriousness of a plaintiff's injury.  See Hamilton v. City of N.Y., 2009 U.S. Dist. LEXIS 63432 (E.D.N.Y. July 23, 2009) (denying summary judgment on excessive force claim); McEnery, 2006 U.S. Dist. LEXIS 53793, at *29 (same).  Although the Second Circuit has stated that "a de minimis use of force will rarely suffice to state a constitutional claim," Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993), a plaintiff need not sustain a severe injury in order to maintain a claim that the use of force was objectively unreasonable under the Fourth Amendment.  See Maxwell v. City of N.Y., 380 F.3d 106, 108 (2d Cir. 2004); Robison v. Via, 821 F.2d 913, 924 (2d Cir. 1987).  The injuries suffered need not be permanent or severe to recover under an excessive force claim.  Id.

Defendants' argument is defeated by the Complaint.  Plaintiff alleges that defendants' use of a horse against him was an unreasonable use of potentially deadly force, Com. ¶ 65, and that he was seriously injured, having been knocked unconscious with a head injury, having suffered bruised ribs, and later having needed surgery and continuing medical care.  See id. ¶¶ 44, 46, 48, 53, 62, 63 ("his cheekbone was crushed, his lower orbital was shattered, his nose was broken, he had a large knot on the back of his head, and he was severely bruised, particularly near his ribs"), 67 (after the event, Plaintiff "attended several medical appointments and treatments, including but not limited to surgery to repair his orbital cavity and courses of antibiotics"), 71.  Any factual dispute as to the extent of the unlawful use of force and the injuries suffered, if there be any, must be resolved by a jury.  See Robison, ("[T]he parties have provided conflicting accounts as to whether [plaintiff or the police] initiated the use of force [and] how much force was used by

7

each. . . . Resolution of credibility conflicts and the choice between these conflicting versions are matters for the jury. . . .").

**C.** **If, _arguendo_, the Fourteenth Amendment is applicable to defendants' use of excessive force, Plaintiff has stated a claim.**

Defendants offer no support for the argument that the "shock the conscience" standard is lower than the Fourth Amendment's excessive force standard. If, _arguendo_, defendants are correct that the use of unlawful force against Plaintiff was not related to an arrest or seizure, and the Fourteenth Amendment "shock the conscience" standard were applicable, Plaintiff has stated a claim for a violation of his substantive due process rights.  Courts consider four factors in determining whether a use of force shocks the conscience: "(1) the need for the application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of injury inflicted, and (4) whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Roberts v. Phillips, 2009 U.S. Dist LEXIS 97281, at *9-*10 (S.D.N.Y. Sep't 29, 2009) (internal citation & quotation marks omitted) (striking plaintiff in the head and assaulting him without justification or provocation and causing injuries shocks the conscience; denying motion to dismiss Fourteenth Amendment claim).

Applying this standard, the Complaint alleges conduct by defendants that shocks the conscience: 1) There was no need for force as Plaintiff was lawfully protesting and not violating any laws, Com. ¶¶ 39-44, 64; 2) The amount of force was without relationship to any need, id.; 3) Plaintiff was seriously injured, having been knocked unconscious with a head injury and having suffered bruised ribs, and later needing surgery and continuing medical care, id. ¶¶ 44,

8

46, 46a, 48, 52, 53, 62, 63, 67; and, finally, 4) There was no good-faith basis for the use of force

because Plaintiff did not and was not engaged in any unlawful activity at the demonstration that

justified any interference by government agents, id. ¶¶ 43, 62, 64, 66.

     Contrary to defendants' argument, Mem. at 9, even under the Fourteenth Amendment, the

extent of the plaintiff's injuries is not dispositive.  In Hemphill v. Schott, 141 F.3d 412, 418 (2d

Cir. 1998), the Second Circuit held that the plaintiff stated a Fourteenth Amendment claim for

excessive force where police aided a private party to shoot the plaintiff, thus "subjecting a citizen

to unwarranted physical harm."   The conscience-shocking aspect in Hemphill was the lack of

justification for the physical harm.  Id.; Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246,

252 (2d Cir. 2001) (holding that a gym teacher's violent physical assault of a student was

sufficiently "conscience-shocking" to constitute a violation of the student's substantive due

process right to be free of excessive force).  The "shock the conscience" standard is met by the

use of the horse as a weapon without lawful justification against Plaintiff who was peacefully

engaged in a political protest when defendants hit him, knocked him to the ground, stepped on

his head, and caused injuries requiring medical attention and surgery.

    **D.**    **For the same reasons, Plaintiff states a valid claim for intentional infliction of emotional distress.**

    For the same reasons, Plaintiff states a valid claim for intentional infliction of emotional

distress because defendants engaged in extreme and outrageous conduct that shocks the

conscience, intended to cause Plaintiff harm, and did cause him severe emotional distress.  The

extreme and outrageous conduct issue is not, as defendants claim, the simple use of a Mounted

Unit, Mem. at 20, but the use of a poorly trained and supervised unit which used its mounts as weapons against peaceful lawful demonstrators and intentionally inflicted physical injury.

**E.      Defendant Quagliano's actions were intentional.**

Contrary to defendants' arguments that the Complaint "does not allow any wrongdoing on the part of the officer who knocked him down, Mem. at 7-8, the Complaint alleges that defendant Quagliano's use of his horse as a weapon was anything but unintentional.  Com. ¶¶ 39, 39a, 65b, 77, 94.  Plaintiff alleges that defendant Quagliano's use of his horse as weapon against the lawfully gathered demonstrators, including Plaintiff, was a deliberate act.  Moreover, given the lack of lawful justification and resulting serious physical and emotional harm, a presumption that it was conscience shocking arises from the conduct itself.  See Johnson, 239 F.3d at 252. Finally, defendants argue that Plaintiff should have expected the presence of mounted officers at the demonstration and that the deployment of the unit was "completely justified." Mem. at 7. Whether the Unit was lawfully present does not preclude a determination that it was unlawful for the mounted officers to approach the crowd without the existence of a state of emergency or unlawful activity that required a use of force, and to hit Plaintiff.  Com. ¶¶ 40-47, 62, 65, 65a.

Defendants argue that because Plaintiff was allegedly in the street at some point, the use of excessive force against him on the sidewalk was justified.  Mem. at 7.  This view is not consistent with the law on excessive force which requires that any use of force be reasonable or in a proper relationship with the need for such force at the time of the use of such force.  If, arguendo, Plaintiff had engaged in a minor unlawful activity earlier in the evening (which he had not), such a violation could not justify the type of excessive, potentially deadly, force that was used against him at a later point in the demonstration.  Given that the Complaint alleges facts that

10

at the time the excessive force was used against Plaintiff, it was entirely unreasonable, unwarranted and unlawful, Plaintiff's excessive force claim cannot be dismissed.

Finally, contrary to defendants' description of the events with regard to unlawful activity in the Complaint, Mem. at 7, Plaintiff does not allege that he engaged in civil disobedience or that the defendants had any reason to believe that he had done so.  Com. ¶¶ 30-40, 42, 43, 62, 64. The Complaint only states that some protestors asked permission to cross a police line, which was denied, and they were arrested in a non-violent fashion; the Complaint clearly states that Plaintiff did not engage in this activity.  Id. ¶¶ 35, 42, 62.

**III.    Defendants' false arrest of Plaintiff violated his Fourth Amendment rights.**

"A police officer may arrest a person if he has probable cause to believe that person committed a crime." Garner, 471 U.S. at 7.  Defendants claim that they had probable cause to arrest Plaintiff for disorderly conduct under N.Y. Penal L. Sec. 240.20.  Mem. at 12.  Defendants also claim that the Complaint sets forth a basis for a "logical inference" that Plaintiff was on the street when struck by the horse then arrested, and that Plaintiff did not voluntarily comply with police orders based on the fact that the police used force against Plaintiff and the crowd.  Id.

Contrary to defendants' argument, the Complaint does not show that Plaintiff obstructed traffic or that he congregated in a public place and refused to comply with a lawful order to disperse, which would be required to find a breach of Sec. 240.20.  Rather, it states: "At no time did Morgan engage in any criminal activity, disobey and lawful order of the police or engage in any other conduct which would have justified the physical force used against him and others or justified the arrest, detention and imprisonment of Morgan." See Com. ¶¶ 35, 42, 43, 62.

11

Defendants claim that their alleged knowledge of some protestors' (but not Plaintiff's) intent to "break the law" can be extended to Plaintiff as a basis for a finding of probable case, Mem. at 12, but they offer no cases to support this novel theory of transferred knowledge of anticipated intent in the disorderly conduct context.  While defendants claim that Plaintiff acknowledges that the protest was unlawful, Mem. at 17, the Complaint states that "[i]t was not his intent to engage in, nor did he engage in, any form of civil disobedience prior to his being assaulted by the defendants."  Com. ¶ 30.  Moreover, the Complaint also states that the demonstrators who engaged in civil disobedience had been peacefully arrested before Plaintiff was attacked by police, so defendants could have had no reason to believe that Plaintiff, too, should have been arrested because of the other protestors' concluded actions.  Id. ¶ 36.

As to the allegedly potential charge of disorderly conduct, Mem. at 11-13, Penal Law Sec. 240.20 does not make it a disorderly conduct violation to be in a street, but rather, only to obstruct traffic.  See Zellner v. Summerlin, 494 F.3d 344, 373 (2d Cir. 2007).  Under New York law, where the disorderly conduct relates to traffic, something more than mere inconvenience of pedestrians is required for a conviction under Sec. 240.20.  See People v. Carcel, 165 N.Y.S.2d 113, 116 (N.Y. 1957); cf. People v. Pearl, 321 N.Y.S.2d 986, 987 (N.Y. Sup. 1971).  The arrestee's conduct must create a serious interference with traffic.  See People v. Barrett, 821 N.Y.S.2d 416, 429 (N.Y. City Crim. Ct. 2006).  For there to be a valid disorderly conduct charge, there must be an actual or threatened breach of the peace.  See Metro. Council, Inc. v. Safir, 99 F. Supp. 2d 438, 449 (S.D.N.Y. 2000) (citation omitted).  The statute also has a very clear mens rea element which requires that there be intent or reckless indifference to causing the prohibited results.  See id. at 449-50; Barrett, 821 N.Y.S.2d at 429.  The facts alleged in the

12

Complaint do not describe a situation that would satisfy any of these elements. The Complaint does not state, as Defendants incorrectly imply at Mem. at 12, that the defendants gave any lawful orders to disperse or otherwise with which Plaintiff did not comply. Com. ¶¶ 37, 40, 42, 62. It does not support defendants' statement that Plaintiff blocked a "major transportation artery in the heart of Nassau County," that he created alarm, that he failed to follow lawful orders, or that he blocked vehicular traffic. Mem. at 13. Rather, the Complaint is to the contrary. Com. ¶¶ 36a, 37a, 42, 43, 62, 64, 65a. See Posr v. Court Officer Shield #207, 180 F.3d 409, 415 (2d Cir. 1999) (reversing grant of motion to dismiss where a reasonable interpretation of the facts in the complaint would show that plaintiff did not violate any section of Penal L. Sec. 240). Thus, the facts as alleged in the Complaint show that Plaintiff did not violate New York's disorderly conduct statute, which is the only charge with which defendants claim they could have charged Plaintiff. See Genia v. Parker, 2007 U.S. Dist. LEXIS 19700, at *41-*51 (E.D.N.Y. Mar. 20, 2007); see also Abdell v. City of N.Y., 2009 U.S. Dist. LEXIS 42719 (S.D.N.Y. May 5, 2009).

The only case relied on by defendants as specifically relating to demonstration arrestees is not to the contrary. Mem. at 13. In Bryant v. City of New York, 404 F.3d 128 (2d Cir. 2005), the court reviewed plaintiffs' claims that they had a constitutional right to be issued desk appearance tickets, rather than be processed through a more detailed manner by police; the court noted there was no genuine dispute as to the facts of the arrests themselves, nor did the plaintiffs in that case assert false arrest claims under 42 U.S.C. Sec. 1983.

Because disputes as to the facts allegedly giving rise to a probable cause determination are to be decided by a jury, McClellan v. Smith, 439 F.3d 137, 148 (2d Cir. 2006), and the Complaint alleges there was no probable cause to arrest Plaintiff, his claim cannot be dismissed.

**IV.    Defendants violated Plaintiff's First Amendment rights.**

To establish a prima facie First Amendment claim, a plaintiff simply must show that he petitioned for redress of grievances or otherwise engaged in protected conduct or speech and that the defendants' actions were motivated by the exercise of that right.  See Gagliardi v. Village of Pawling, 18 F.3d 188, 194 (2d Cir. 1994).  "The demonstration, the picket line, and the myriad other forms of protest which abound in our society each offer peculiarly important opportunities in which speakers may at once persuade, accuse, and seek sympathy or political support, all in a manner likely to be noticed. . . . [T]he loss of an opportunity to demonstrate constitutes loss of First Amendment rights 'in their most pristine and classic form.'"  Dellums v. Powell, 566 F.2d 167, 195 (D.C. Cir. 1977) (quoting Edwards v. S.C., 372 U.S. 229, 235 (1963)).  "[P]resence at a demonstration, and therefore access to it, is a form of speech and assembly in a public forum, and accordingly, 'receives a more heightened protection under the First Amendment.'"  Stauber v. City of N.Y., 2004 WL 1593870, at *24 (S.D.N.Y. July 14, 2004) (quoting United Yellow Cab Drivers Ass'n, Inc. v. Safir, 1998 WL 274295, at *7 (S.D.N.Y. May 27, 1998)).  Moreover, "[i]t is well-established that 'the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers.'"  Webster v. City of N.Y., 333 F. Supp. 2d 184, 202 (S.D.N.Y. 2004) (quoting Houston v. Hill, 482 U.S. 451, 461 (1987)); see Provost v. City of Newburgh, 262 F.3d 146, 154 (2d Cir. 2001).

14

Defendants argue that lawful time, place and manner restrictions were imposed such that it was "completely reasonable for the police to direct the protest away from the entrance to the debate forum and onto a sidewalk." Mem. at 14. This is inaccurate. Plaintiff alleges that he was subjected to excessive police force and false arrest because of his participation in an anti-war demonstration in which he and other demonstrators protested, inter alia, the refusal to permit veterans to submit questions to the debaters and then the arrest of the veterans, and as noted above, he did not engage in any unlawful conduct giving rise to probable cause for an arrest. See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996); Logsdon v. Hains, 492 F.3d 334, 346 (6th Cir. 2007); Pouillon v. City of Owosso, 206 F.3d 711, 718 (6th Cir. 2000); Lamb v. City of Decatur, 947 F. Supp. 1261, 1264 (C.D. Ill. 1996). The intentional, unjust use of force against Plaintiff and then his seizure, removal and confinement did not just delay or deter him from speaking, but prevented him from exercising his First Amendment rights for the remainder of the event. This extinguishing of Plaintiff's ability to speak or assemble constituted a direct infringement of Plaintiff's First Amendment rights, rather than an incidental restriction on the time, place or manner of his speech as defendants imply.

Police may not interfere with demonstrations unless there is a 'clear and present danger' of riot, imminent violence, interference with traffic or other immediate threat to public safety. See Papineau v. Parmley, 465 F.3d 46, 56-58 (2d Cir. 2006); Logsdon, 492 F. 3d at 346; Olivieri v. Ward, 613 F. Supp. 616, 621 (S.D.N.Y. 1985), vacated on other grounds, 766 F.2d 690 (2d Cir. 1985); Dellums, 566 F.2d at 195. Because of the premium placed on freedom of speech, especially regarding political matters such as national elections and war, the "clear and present danger" standard is a high one. "Neither energetic, even raucous, protestors who annoy or anger

15

audiences, nor demonstrations that slow traffic or inconvenience pedestrians, justify police stopping or interrupting a public protest." Papineau, 465 F.3d at 58.  Here, where the arresting officers lacked even probable cause, that is, knowledge or reasonably trustworthy information of facts and circumstances sufficient to warrant a person of reasonable caution in the belief that Plaintiff had committed or were committing a crime, see Weyant, 101 F.3d at 852, the facts alleged in the Complaint show that Plaintiff did not pose a clear and present danger of imminent lawlessness.  Because the use of force was excessive and the arrest was made without probable cause, and in the absence of a clear and present danger of lawbreaking or threat to public safety, Defendants violated Plaintiff's rights of speech, assembly and association.

Defendants also argue that their conduct was justified because unlawful activity generally is not protected by the First Amendment and some demonstrators engaged in civil disobedience. Mem. at 14.  Plaintiff does not dispute that some demonstrators were arrested but that does nothing for defendants' argument.  As alleged in his Complaint, Plaintiff did not engage in unlawful activity.  Com. ¶¶ 35, 42, 62, 64, 65a.  The Supreme Court has held that "[t]he right to associate does not lose all constitutional protection merely because some members of the group may have participated in conduct or advocated doctrine that itself is not protected." NAACP v. Claiborne Hardware Co., 458 U.S. 886, 908 (1982).  Thus, the fact that other protestors apart from Plaintiff may have engaged in civil disobedience did not permit defendants to interfere with Plaintiff's rights.  Moreover, even if the conduct of those arrested for nonviolent civil disobedience is relevant, it would not have justified defendants' conduct directed at Plaintiff.

As to defendants' subjective motivation, given defendants' use of excessive force against Plaintiff, and the false arrests at a political anti-war rally at a presidential debate, there are

16

sufficient allegations in the Complaint to allow Plaintiff to proceed with his claim that

Defendants interfered with Plaintiff's rights because of his exercise of his First Amendment

rights.  Defendants retaliated against the protestors by arresting Plaintiff after the crowd

criticized the NCPD for arresting the nonviolent civil disobedience protestors.  Id. ¶¶ 34b, 35a,

66.  Attacking Plaintiff, removing him from the protest site and arresting him clearly chilled his

exercise of his First Amendment right because it prevented his participation in the protest.  Id.

¶¶ 66, 70a.  The harassing, mocking and taunting of Plaintiff and others at the stationhouse,

including police officers calling him and others "cowards" and "traitors" although Plaintiff was

wearing a U.S. Army uniform and had been attending a political rally organized by Iraq Veterans

Against the War, is further evidence of defendants' motivating animus in attacking and arresting

Plaintiff.  Com. ¶¶ 50a, 54a 55.  These facts show sufficient injury motivated by Plaintiff's

exercise of his First Amendment rights to plead a First Amendment violation.  See, e.g., Estate of

Morris v. Dapolito, 297 F. Supp. 2d 680, 694 n.12 (S.D.N.Y. 2004); Jackson v. N.Y.S., 381 F.

Supp. 2d 80, 90 (N.D.N.Y. 2005); Bennett v. Hendrix, 423 F.3d 1247, 1252 (11th Cir. 2005).

**V.    Defendants were deliberately indifferent to Plaintiff's medical needs.**

"The Due Process Clause . . . does require the responsible government or governmental

agency to provide medical care to persons, . . .  who have been injured while being apprehended

by the police.  In fact, the due process rights of a person in [plaintiff]'s situation are at least as

great as the Eighth Amendment protections available to a convicted prisoner."  Revere v. Mass.

Gen. Hosp., 463 U.S. 239, 244 (1983).  To prevail on a claim of deliberate indifference to

medical needs while under arrest, a plaintiff must demonstrate: 1) that an official "denied [him]

treatment needed to remedy a serious medical condition," and 2) that the official did so "because

17

of his deliberate indifference to that need." Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996).
To establish deliberate indifference, a plaintiff must show "something more than mere
negligence; but proof of intent is not required." Id. (quotation marks omitted). "[T]he state of
the defendant's knowledge is normally a question of fact to be determined after trial." Id.

    As defendants acknowledge, arrestees are protected from deliberate indifference to a
serious medical need.  Defendants argue that they did not know of Plaintiff's injuries, but the
Complaint alleges that he lay unconscious on the ground after being trampled, bleeding from his
head, that police officers close to Plaintiff prevented others from assisting him, and that the
police dragged him away and put him on a bus.  Com. ¶¶ 46, 47.  Given these facts, and
Plaintiff's damaged orbital cavity and crushed cheekbone, id. ¶ 67, defendants' argument that
they did not have adequate notice of Plaintiff's serious medical needs is unsupportable.
Moreover, other arrestees informed NCPD officers about Plaintiff's medical needs so they were
aware of his condition, yet they deliberately withheld the immediate provision of medical
services to Plaintiff. Id. ¶ 49.

    Defendants argue that Plaintiff has no claim because he was treated at the hospital then
released into NCPD custody.  Mem. at 8- 9.  Nothing in the Complaint suggests that this medical
care was adequate.  Defendants' argument does not consider the allegations that "[s]ubsequent to
the events of October 15, 2008, Morgan received additional medical care for injuries because of
defendants' action and inactions.  He attended several medical appointments and treatments,
including but not limited to surgery to repair his orbital cavity and courses of antibiotics," Com.
¶ 67, and that Morgan continues to receive medical care and suffers adverse medical
consequences related to the events of October 15, 2008, including blurry vision, an oozing eye

and facial pain," id. ¶ 69.  Where Plaintiff suffered from a serious medical condition requiring

surgery, the Fourteenth Amendment deliberate indifference standard is met.  See Hathaway v.

Coughlin, 37 F.3d 63, 67 (2d Cir. 1994).

**VI.      The County is a proper defendant.**

          In order to establish that a municipality was at fault for a plaintiff's constitutional injury,

a plaintiff must allege that the violation resulted from a municipal policy, custom or practice.

See Monell v. N.Y.C. Dep't of Social Servs., 436 U.S. 658, 690-94 (1978).  A plaintiff may

satisfy this requirement in four ways, three of which apply here.  First, a plaintiff may allege that

the municipal policymaker took an action that directly caused the violation in question.  See

Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986).  Municipal liability will lie even if

the action is "tailored to a particular situation and not intended to control decisions in later

situations," id. at 481, but the policy maker must be one who possesses final authority to

establish municipal policy with respect to the action ordered.  See City of St. Louis v.

Praprotnik, 485 U.S. 112, 123 (1988).  Second, a plaintiff may allege that the municipal act was

taken pursuant to a custom "so widespread as to have the force of law."  Bd. of County Comm'rs

of Bryan County v. Brown, 520 U.S. 397, 404 (1997); see Okin v. Vill. of Cornwall-on-Hudson

Police Dep't, 577 F.3d 415, 339 (2d Cir. 2009).  Under this theory, the act in question need not

have been formally approved by a final decision maker.  Id.  Third, a plaintiff may allege that the

municipality "has not directly inflicted an injury, but nonetheless has caused an employee to do

so."  Bryan County, 520 U.S. at 405.  A plaintiff seeking to establish municipal liability on this

theory must demonstrate that the municipal action was taken with "deliberate indifference as to

its known or obvious consequences."  Id. at 407.  The "deliberate indifference" standard requires

proof that a municipal actor "disregarded a known or obvious consequence of his action." Id. at 410.  In addition, there must be a causal link between the policy, custom or practice and the alleged injury to find liability against the municipality.  See id. at 404.  A failure to adequately train municipal employees can constitute deliberate indifference.  See Okin, 577 F.3d at 440.

We focus here on the Monell claim that defendants claim should be dismissed, Mem. at 17: their use of police horses against a peaceful crowd when no emergency or exigent circumstances existed as an unconstitutional use of force as a matter of law.  See Amnesty Am. v. Town of West Hartford, 361 F.3d 113, 123 (2d Cir. 2004) (citing Graham, 490 U.S. at 396). The use of horses at the October 15th demonstration was an exceptionally egregious violation of Plaintiff's Fourth Amendment right to be free of excessive force.  See Graham, 490 U.S. at 395. The Mounted Unit's acts of riding into the crowd and using physical contact to move and disperse a vocal but otherwise peaceful and compliant group of demonstrators amounted to an extreme and exceedingly dangerous use of force against plaintiff and other demonstrators. Viewed in light of the Graham factors, the allegations that Plaintiff did not engage in any unlawful act, that there was no threat to the safety of the officers or others, and that those arrested did not resist arrest or attempting to evade arrest by flight, there was no justification for the use of force.  See Graham, 490 U.S. at 396.  Even if a minimal danger were posed by crowd congestion, that risk could not have justified the use of thousand-pound animals to physically push the crowd and subject them to a substantial risk of being shoved to the ground or trampled. Because no reasonable factfinder could conclude that the officers' conduct was objectively reasonable, Amnesty Am., 361 F.3d at 123, Plaintiff has alleged a Fourth Amendment violation.

20

Generally accepted police policies and practices regarding the use of horses at a demonstration hold that, in the absence of an emergency threat, moving horses into a crowd and making contact with crowd members in order to disperse them was an unreasonable use of force. As the Complaint alleges, horses can inflict serious and possibly lethal physical injuries on individuals in a crowd. Com. ¶ 71e. "Any reasonable police officer and manager would be aware" that the deployment of horses into a packed crowd "would create a high likelihood of injury to persons who could not protect themselves." Id. ¶ 71d. Because this force was not used in response to any serious or legitimate emergency threat, and because these actions contravened generally accepted police policies and practices, they were presumptively unreasonable under the circumstances and constituted excessive force. Id. ¶¶ 71a-f. The actions of the Mounted Unit, including Quagliano, violated generally accepted police practices which recognize the significant harm that horses can cause if they come in direct contact with individuals. The force used was thus contrary to generally accepted police practices for use of a Mounted Unit, id. ¶¶ 71a-h, and objectively unreasonable as a matter of law.

Because the use of the Mounted Unit at the demonstration was part of the debate security planning in which the NCPD actively participated, it was a policy of the County. Because the training, supervision and policies of the Mounted Unit were unconstitutional with regard to the use of force, Com. ¶ 26g, it is the basis for Monell liability. First, the planning for security to be provided by Nassau County was directed and coordinated by the municipality's policymakers, including Chief O'Callahan, who actively participated in the planning for the debate security. Id. ¶¶ 26e-g. The authorization and use of the Mounted Unit to police the demonstration is an action that directly caused the violation in question. See Pembaur, 475 U.S. at 483-84. Thus,

21

municipal liability lies against the County even if the security planning using the Mounted Unit was "tailored to a particular situation and not intended to control decisions in later situations," id. at 481. Here, the defective practices, policies and training of the NCPD Mounted Unit were ratified as part of the security plan for the debate. Com. ¶¶ 26e-g, 94a. Second, Plaintiff properly alleges that the use of the Mounted Unit at the demonstration was based on defective training, policy and practice which had the force of custom. Id. ¶¶ 94a-96. Given that the conduct of the Mounted Unit officers, including Quagliano, alleged in the Complaint contravened generally accepted police practices, there are sufficient allegations to show that the Mounted Unit custom in the NCPD gave rise to Plaintiff's injuries, and thus municipal liability. Third, despite the extensive review of security planning that appears to have been conducted to prepare for the debate, the County's policymakers were deliberately indifferent to the likely harm that would be caused by an ill-prepared Mounted Unit at a nationally sensitive political event that was likely to draw many demonstrators. Given the obvious likelihood of injury that could be caused by an ill-prepared or trained Mounted Unit, the actions of the County in approving is use and employing the Mounted Unit at the demonstration amounted to deliberate indifference.

Contrary to defendants' argument, Mem. at 16, one incident can violate Monell when these standards are met. Given that the Mounted Unit horses moved aggressively against many demonstrators, and came into physical contact with more than one demonstrator, and disrupted the protest, the misuse of the Mounted Unit against Plaintiff was not an "isolated" act.

Finally, contrary to defendants' statement that "Plaintiff concedes that this protest was not lawful," Mem. at 17, Plaintiff makes no such concession. Rather, he alleges that the protest was peaceful and he did not engage in unlawful conduct. This defense against Plaintiff's claim

22

that the use of the Mounted Unit was unconstitutional is not based on the Complaint, which is the only proper basis for defendants' motion.

Here, given the extensive involvement of the County, including defendant O'Callaghan, in planning for debate security; the approval of and incorporation of the Mounted Unit into plans for debate security; the inadequacies of the training, policies and practices of the Unit as being inconsistent with generally accepted police practices and policies for the use of a Mounted Unit, there is municipal liability for the excessive force and arrest, and violations of Plaintiff's Fourth (or Fourteenth) and First Amendment rights.  Com. ¶¶ 26b-g.

## VII.   Commissioner Mulvey, Lt. Pandolfo and P.O. Maher are proper defendants.

Commissioner Mulvey is a proper defendant because as the NCPD Commissioner of Police, he is responsible for promulgating NCPD policies, including Mounted Unit policies and the security plan for the NCPD's involvement in the demonstration.  Com. ¶¶ 10, 10a.   As explained above, the policies of the NCPD were unconstitutional but approved by defendant Mulvey.  As such, he is individually liable for promulgating unconstitutional policies, practices and procedures.   The claims against him personally are not duplicative, Mem. at 19, so there is no basis for such a dismissal where supervisory liability exists, as it does here.  (For similar reasons, Chief of Patrol O'Callaghan, who Plaintiff identifies as one of the John Doe defendants in the amended complaint, is responsible for coordinating, promulgating and approving the security plan for the demonstration, which included approval of the use of the inadequately trained and supervised Mounted Unit.)

Defendant Pandolfo is a proper defendant because he was the supervisor of the Mounted Unit which committed the acts of excessive force against Plaintiff on October 15th and was

23

involved in his arrest.  He was responsible for the Mounted Unit's deployment at the event.
Com. ¶¶ 12, 84, 84a.  He failed to properly supervise or halt the unlawful actions of the
Mounted Unit.  He thus has supervisory liable for the unconstitutional actions of his
subordinates.  See Malay v. City of Syracuse, 638 F. Supp. 2d 303, 312 (N.D.N.Y. 2009).

Defendant Maher is a proper defendant as the arresting officer of record for Plaintiff's
arrest and was thus personally involved in the false arrest.  The DAT which required Plaintiff to
appear in court contained false statements that Defendant Maher knew or should have known to
be false.  Com. ¶ 56. Accordingly, he violated Plaintiff's right to be free from false arrest.

Contrary to defendants' argument that claims against defendants Mulvey, Pandolfo,
Quagliano and Maher are duplicative of those against the County, Mem. at 21, the Complaint
sufficiently alleges claims against the individual defendants for their personal acts as well as
their supervisory acts as outlined above.  Particularly given that the County moves to dismiss the
claims against itself, the claims against these individuals cannot be dismissed as duplicative,
especially until the County's liability is assured.

## VIII.   Plaintiff has standing for injunctive relief and a declaratory judgment.

Defendants argue that Plaintiff lacks standing to request injunctive relief or a declaratory
judgment because he was resident in West Virginia.  Mem. at 15.  As to future harm, chilling a
plaintiff's speech is a constitutional harm adequate to satisfy the injury-in-fact requirement.  See
Meese v. Keene, 481 U.S. 465, 473 (1987).  Here, a likelihood of future harm is established by
the facts: 1) that the defendants have not confirmed that they have changed their unconstitutional
policy; 2) that Plaintiff states that if there are future Iraq Veterans Against the War events in
Nassau County, he may travel to participate in them; and 3) that Plaintiff is afraid of

24

participating in public demonstrations because of his experience in Nassau County.  Com. ¶¶ 70a-70b.  Given these circumstances, Plaintiff's First Amendment rights have been chilled, and he is entitled to injunctive and declaratory relief.

## IX.     Plaintiff states valid state constitutional claims.

For the reasons stated above as to why Plaintiff's federal constitutional claims are valid, his New York State constitutional claims are also valid.  Because his federal claims have not been vindicated, his State claims should not be dismissed as duplicative.  In particular, because New York's protections for free speech are greater than those under the federal constitution, his State claims in that regard are not duplicative and would not be adequately vindicated under the federal claims.  See People ex rel. Arcara v. Cloud Books, 510 N.Y.S.2d 844, 846-47 (N.Y. 1986); Time Square Books, Inc. v. City of Rochester, 645 N.Y.S.2d 951, 955 (4th Dep't 1996).

Finally, as the federal claims should not be dismissed, it is appropriate to exercise supplemental jurisdiction over the State claims which involve the same.

## CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests that the motion to dismiss be denied in its entirety, and leave to serve and file the amended complaint be granted.

Dated:        New York, New York
              January 28, 2010

                                        Jonathan C. Moore (jmoore@blhny.com)
                                        Vera M. Scanlon (vscanlon@blhny.com)
                                        BELDOCK LEVINE & HOFFMAN LLP
                                        99 Park Avenue, Suite 1600
                                        New York, New York 10016
                                        (212) 490-0400
                                        Attorneys for the Plaintiff

25