UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------X
NICHOLAS MORGAN,

                                      Plaintiff,         09-CV-4168
                                                                       (ADS) (AKT)

     - against -

THE COUNTY OF NASSAU, a municipal entity; NASSAU
COUNTY COMMISSIONER OF POLICE LAWRENCE W.
MULVEY; NASSAU COUNTY POLICE OFFICER
"MICHAEL" QUAGLIANO; NASSAU COUNTY POLICE
LIEUTENANT NICHOLAS PANDOLFO, COMMANDING
OFFICER, MOUNTED UNIT; NASSAU COUNTY POLICE
OFFICER CHRISTOPHER P. MAKER, SHIELD NO. 1578,
individually and in their official capacities; and JOHN DOES
1-10, Nassau County Police Officers, Supervisors and/or
Commanders, individually and in their official capacities,

                                                    Defendants.
---------------------------------------------------------------------------X


**MEMORANDUM OF LAW IN REPLY TO PLAINTIFF'S OPPOSITION AND IN
FURTHER SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(6)
<u>OF THE FEDERAL RULES OF CIVIL PROCEDURE</u>**


                                                JOHN CIAMPOLI
                                               Nassau County Attorney Designee
                                               One West Street
                                               Mineola, New York 11501
                                               (516) 571-3011

Of Counsel:
Matthew Weinick
Deputy County Attorney

Dated:
February 11, 2010

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

   I. PLAINTIFF'S UNTIMELY PROPOSED AMENDED COMPLAINT SHOULD BE REJECTED ............................................................................................................................. 1

   II. PLAINTIFF'S EXCESSIVE FORCE CLAIM MUST BE ANALYZED UNDER THE FOURTEENTH AMENDMENT ........................................................................................... 2

   III. PLAINTIFF WAS PROPERLY ARRSTED FOR DISORDERLY CONDUCT .................5

   IV. PLAINTIFF'S FIRST AMENDMENT RIGHTS WERE NOT VIOLATED .......................7

   V. PLAINTIFF'S *MONELL* ARGUMENTS ARE NOT FOUNDED IN THE LAW OR THE FACTS .................................................................................................................................... 7

CONCLUSION ............................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Cases**

*Amnesty Am. v. Town of West Hartford*, 361 F.3d 113 (2d Cir. 2004)............................................ 8

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ........................................................................................ 5

*Brower v. County of Inyo*, 489 U.S. 593 (1989) .............................................................................. 2

*Buck v. City of Albuquerque*, 549 F.3d 1269 (10th Cir. 2008) ....................................................... 3

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998)..................................................................... 4

*Davis v. City of New York*, No. 02-9174, 2003 U.S. App. LEXIS 19650 (2d Cir. Sept. 23, 2003) 9

*Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83 (2d Cir. 2002) ............ 2

*Hemphill v. Schott*, 141 F.3d 412 (2d Cir. 1998)............................................................................. 4

*Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085 (2d Cir. 1995) ................................................. 5, 6

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger USA,* 146 F.3d 66 (2d Cir. 1998) ............. 5

*Jackson v. County of Nassau*, 07-CV-245, 2010 U.S. Dist. LEXIS 5344 (E.D.N.Y. Jan 22, 2010) ................................................................................................................................................... 9

*Jeffes v. Barnes*, 208 F.3d 49 (2d Cir. 2000) ................................................................................... 9

*Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246 (2d Cir. 2001) ....................................... 4

*Maxwell v. City of New York*, 102 F.3d 664 (2d Cir. 1996) ........................................................... 2

*McEnery v. City of New York*, 03 Civ. 6307, 2006 U.S. Dist. LEXIS 53793 (S.D.N.Y. Aug. 3, 2006) ............................................................................................................................................ 3

*Metro. Council, Inc. v. Safir*, 99 F. Supp. 2d 438 (S.D.N.Y. 2000) ............................................... 6

*Morgan v. Nassau County*, 03-CV-5109, 2009 U.S. Dist. LEXIS 79180 (E.D.N.Y. Sept. 1, 2009) ................................................................................................................................................ 5, 6

*Oklahoma City v. Tuttle*, 471 U.S. 808 (1985) ............................................................................... 9

*People v. Pearl*, 66 Misc. 2d 502 (N.Y. App. Div. 1971) .............................................................. 5

*Ricciuti v. N.Y.C. Transit Authority,* 941 F.2d 119 (2d Cir. 1991) ................................................ 2

*Salamacha v. Lynch*, No. 98-7205, 1998 U.S. App. LEXIS 38853 (2d Cir. Sept. 25, 1998) ..... 2, 3

*Sheppard v. Beerman*, 18 F.3d 147 (2d. Cir. 1994) ........................................................................ 2

*Singer v. Fulton County Sheriff*, 63 F.3d 110 (2d Cir. 1995) ......................................................... 7

**Rules**

Fed. R. Civ. P. 15............................................................................................................................. 1

## PRELIMINARY STATEMENT

Defendants, County of Nassau, Police Commissioner Lawrence W. Mulvey, Police Officer Michael Quagliano, Police Lieutenant Nicholas Pandolfo, and Police Officer Christopher P. Maher (s/h/a Christopher P. Maker) ("Defendants") submit this memorandum of law in reply to Plaintiff's opposition memorandum and in further support of their motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6). As shown by Defendants' initial memorandum and as will be set forth more fully below, Plaintiff's complaint does not state a Section 1983 claim and his state law claims are insufficient. Additionally, Plaintiff's opposition memorandum is not the appropriate mechanism by which to amend his Complaint so the Amended Complaint must be rejected.

Plaintiff's Complaint and opposition memorandum obfuscate the facts by couching them in legal conclusions. When the facts are viewed plainly, the conclusion is clear that on October 15, 2008, Nicholas Morgan and the crowd of protestors with him created a dangerous situation outside of the United States presidential debate by blocking the entrance and roadway leading to the debate site. Nassau County police officers responded to this threat appropriately and reasonably and their actions were lawful. Accordingly, the Court should dismiss Plaintiff's Complaint because it does not state a plausible claim for relief.

## ARGUMENT

### I. PLAINTIFF'S UNTIMELY PROPOSED AMENDED COMPLAINT SHOULD BE REJECTED

A party may amend its pleadings as a matter of right within twenty-one days after a motion to dismiss has been served. FED. R. CIV. P. 15(a)(1)(B). On November 20, 2009, Defendants served their motion to dismiss. December 11, 2009 was the last date by which Plaintiff could amend his Complaint without leave of Court. Plaintiff's opposition memorandum

1

is not the appropriate mechanism to request such an amendment; therefore, the Court should reject Plaintiff's Proposed Amended Complaint. *See id.* (a)(2); J. Spatt, IND. PRACT. R. IV(B)(iii). Notwithstanding this objection, the Court should nevertheless reject the Amended Complaint. The amendment would be futile since the Amended Complaint cannot withstand a motion to dismiss. *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (citing *Ricciuti v. N.Y.C. Transit Authority,* 941 F.2d 119, 123 (2d Cir. 1991)).

## II. PLAINTIFF'S EXCESSIVE FORCE CLAIM MUST BE ANALYZED UNDER THE FOURTEENTH AMENDMENT

The Second Circuit has stated unequivocally that the Fourteenth Amendment applies in excessive force cases arising outside the context of an arrest. *Salamacha v. Lynch*, No. 98-7205, 1998 U.S. App. LEXIS 38853, *4-8 (2d Cir. Sept. 25, 1998). To determine whether a person has been "seized" within the meaning of the Fourth Amendment, the Court must look to whether the police officers intended to acquire physical control over the subject restricting his liberty rendering him not free to leave. *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989); *Maxwell v. City of New York*, 102 F.3d 664, 668 n.2 (2d Cir. 1996). Where an individual is only restricted from a particular area yet remains free to go anywhere else, no seizure has occurred, even when the individual is escorted from the restricted area. *Maxwell*, 102 F.3d at 668 n.2; *Sheppard v. Beerman*, 18 F.3d 147, 153 (2d. Cir. 1994).

*Sheppard* is instructive on the degree of control necessary to constitute a seizure and its facts can be analogized to those in the case at bar. In *Sheppard*, the plaintiff, employed as a law clerk, was informed that he was fired and was then escorted out of the judge's chambers and from the courthouse. *Sheppard*, 18 F.3d at 149-50. Plaintiff alleged that his being escorted from the courthouse constituted a Fourth Amendment seizure. *Id.* at 153. The Second Circuit disagreed. The Circuit held that since plaintiff was "free to go anywhere else that he desired,"

2

except the Courthouse and chambers, he was not prevented from being free to leave and was not seized. *Id.*

Similarly, in this case, Nassau County police officers were directing the protestors away from the restricted area of Hofstra's entrance and off Hempstead Turnpike's roadway. These facts are clear from the Complaint. *E.g.* ¶¶ 36, 37 ("NCPD began to . . . move the crowd of demonstrators away from the entrance to Hofstra . . . [and the] [d]emonstrators were forced . . . to move backwards onto a sidewalk. . . ."); *see also* Pl. Opp. at 20 (Mounted Unit was used to "move and disperse" crowd). Plaintiff remained free to leave the area completely or to back onto the sidewalk, as directed. Plaintiff was only restricted from remaining illegally in the roadway and in front of Hofstra's entrance; therefore, his liberty was not restricted to the degree required to constitute a Fourth Amendment seizure. *Compare McEnery v. City of New York*, 03 Civ. 6307, 2006 U.S. Dist. LEXIS 53793, *11-12 (S.D.N.Y. Aug. 3, 2006) (seizure adequately alleged where plaintiff was pinned between a window and the horse and arrest was made); *Buck v. City of Albuquerque*, 549 F.3d 1269, 1274 (10th Cir. 2008) (Fourth Amendment analysis used where plaintiff was pinned between two horses in attempt to arrest him). Because the force was used to move the crowd out of the roadway and not to effect Plaintiff's arrest, which occurred later, the correct analysis is the Fourteenth Amendment "shock the conscience" test.

Despite Plaintiff's claim to the contrary, the distinction between amendments is significant. The Second Circuit identified a clear difference between a Fourth and Fourteenth amendment analysis. *Salamacha*, 1998 U.S. App. LEXIS 38853, at *8 (noting Fourteenth Amendment's "shocks the conscience" standard is "the higher standard"). "Only purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation." *Id.* (quoting *County*

3

of Sacramento v. Lewis*, 523 U.S. 833 (1998)). As fully discussed in Defendants' initial memorandum, the conduct at issue is not arbitrary and does not shock the conscience.

Plaintiff's cases do not suggest any other conclusion. In *Hemphill*, police officers provided a private citizen with an automatic weapon, then allowed the citizen to accompany the officers in pursuit of the plaintiff (then suspect), where the citizen used the weapon to shoot the plaintiff "several times." *Hemphill v. Schott*, 141 F.3d 412, 419 (2d Cir. 1998). In *Johnson*, the defendant, a gym teacher, brutally assaulted the plaintiff, a student. *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 249 (2d Cir. 2001). The assault on the student included choking him, lifting him off the ground by his neck, dragging him, slamming him into the bleachers four times, ramming his forehead into a metal fuse box, and punching him in the face. *Id.* The conduct in both of these cases lacks any relationship to any legitimate purpose so it can fairly be said to shock the conscience.

Unlike *Hemphill* and *Johnson*, Defendants have already established that the conduct in the instant action does not shock the conscience because it was related to an important government interest and was reasonable. The deployment of the mounted unit was completely reasonable to control a crowd of 200 to 300 demonstrators gathered at an access point to Hofstra University where two United States Senators were debating to become the next president of the United States. Additionally, the demonstrators were gathered on a heavily traveled roadway in the heart of Nassau County. As can be inferred from the Complaint, the demonstrators were refusing to comply with the NCPD's orders to move back, thus necessitating the police to forcefully clear the roadway. Compl. ¶¶ 36, 37, 38. Accordingly, when analyzed under the Fourteenth Amendment's shock the conscience standard, Plaintiff's claim must be dismissed. However, for the same reasons, if the Court analyzes Plaintiff's excessive force claim under the

4

Fourth Amendment, the use of force was, nevertheless, reasonable and dismissal is still appropriate.

### III. PLAINTIFF WAS PROPERLY ARRSTED FOR DISORDERLY CONDUCT

Plaintiff was properly arrested for violating N.Y. Penal Law § 240.20, disorderly conduct, because he caused a serious interference with traffic and failed to comply with the lawful orders of police to disperse. *People v. Pearl*, 66 Misc. 2d 502, 503 (N.Y. App. Div. 1971) (affirming conviction under § 240.20 because defendant-demonstrator continued blocking crosswalk after police ordered protestors to other side of street where barricades were set up). Plaintiff claims that because he has pleaded "[a]t no time did Morgan engage in any criminal activity, disobey and [sic] lawful order of the police or engage in any other conduct which would have justified the . . . imprisonment of Morgan," (Pl. Opp. at 11) that the Complaint establishes his arrest was unlawful. However, these statements are merely legal conclusions that the Court must disregard. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009). In reviewing the actual facts that are pleaded, it is clear that Plaintiff's false arrest claim is not facially plausible. *See id.* at 1950.

The facts that are pleaded show that Plaintiff was in Hempstead Turnpike's roadway, that police gave orders to back off the roadway, and that Plaintiff, and others, refused to comply. Plaintiff pleads that the demonstration took place at the entrance gates to Hofstra University located on Hempstead Turnpike. Compl. ¶ 27. The Court may take judicial notice of the fact that Hempstead Turnpike is a heavily traveled transportation artery running through Hempstead in the heart of Nassau County and, from that location, it provides access to, *inter alia*, Long Island's parkways, the Nassau Coliseum, and the Nassau University Medical Center. *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger USA,* 146 F.3d 66, 70 (2d Cir. 1998) (courts may take judicial notice of facts generally known within the court's jurisdiction); *Hirsch v. Arthur*

5

*Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995) (in determining a 12(b)(6) motion, the court may consider facts of which it may take judicial notice). Furthermore, seven o'clock in the evening, the time of the alleged events, is a high traffic time on Hempstead Turnpike in Hempstead. Without doubt, the protest in the roadway caused a significant interference with traffic and blocked a critical point of emergency access to and from the presidential debate.

Plaintiff's Complaint clearly shows that police issued orders to the crowd. Compl. ¶ 37 ("Demonstrators were forced by NCPD police officers' *orders* and actions to move backwards" (emphasis added)). The Complaint makes it apparent that at this point, the demonstrators were in the roadway. Compl. ¶ 34, 36, 37 (demonstrators approached a police line and were then moved away from the entrance to Hofstra and onto a sidewalk). Plaintiff admits that he was at the front of this group of protestors. Compl. ¶ 40. Furthermore, the Complaint shows that Plaintiff did not voluntarily comply with the officers' orders since officers had to "push" him onto the sidewalk. Compl. ¶ 40. That Plaintiff did not voluntarily leave the roadway establishes he was at least reckless, which Plaintiff concedes is an acceptable *mens rea*. *See* Pl. Opp. at 12 (citing *Metro. Council, Inc. v. Safir*, 99 F. Supp. 2d 438, 449 (S.D.N.Y. 2000)).

Furthermore, probable cause does not require that an officer know to a certainty that a crime has been committed. *Morgan v. Nassau County*, 03-CV-5109, 2009 U.S. Dist. LEXIS 79180, *12 (E.D.N.Y. Sept. 1, 2009). Probable cause only requires a showing of a "probability" that a crime is taking place. *Id*. Therefore, defendant officers were not required to know to a certainty that Plaintiff had the requisite *mens rea*. The officers' knowledge that demonstrators intended to break the law sufficiently allows an officer to reasonably believe that Plaintiff, standing in the roadway and not complying with his orders to move, was intentionally breaking the law.

## IV. PLAINTIFF'S FIRST AMENDMENT RIGHTS WERE NOT VIOLATED

As an initial matter, because Defendants' had probable cause to arrest Plaintiff, the Court need not look at the underlying motivation for the arrest. *See Singer v. Fulton County Sheriff*, 63 F.3d 110, 120 (2d Cir. 1995). However, even looking beyond this defect in Plaintiff's claim, his First Amendment argument ignores the facts that *he* has pleaded. The omitted facts establish Defendants' motivation for actions taken outside the presidential debate were all security and safety related. First, protestors marched on the gates to Hofstra University. Compl. ¶ 34. Just beyond the police line that the protestors attempted to pass through were United States Senators Obama and McCain, debating to become the next president of the United States. ¶ 26, 34. Some, but not all, of these protestors were arrested. Compl. ¶ 34. As demonstrated, the protestors blocked Hofstra's entrance and blocked Hempstead Turnpike. Officers cleared this area to maintain the Senators' safety, not to retaliate against the protestors. Finally, although not pleaded, the Court need only rely on its experience to understand the extreme security risks associated with an event such as a presidential debate and the need to maintain order and clear roadways in and around the debate site. Certainly, the only plausible explanation for the police action taken outside the debate forum was to maintain security and not suppression of the protestors' speech, or any other right.

## V. PLAINTIFF'S *MONELL* ARGUMENTS ARE NOT FOUNDED IN THE LAW OR THE FACTS

In his *Monell* arguments, Plaintiff continues to obscure the issues by relying on his position that the police conduct at the debate site was unreasonable and excessive. However, regardless of how unreasonable Plaintiff views the conduct, the fact remains that Plaintiff's injury was not caused by any decision, policy, custom, or training inadequacy that allows Plaintiff to recover from the municipal defendant.

7

Plaintiff seeks a finding that using police horses against a crowd when no emergency or exigent circumstances exists is unconstitutional as a matter of law and that such a determination imposes *Monell* liability in this case. This proposition is highly flawed. The statement includes the assumption that no emergency or exigent circumstances existed. As illustrated throughout Defendants' memoranda, emergency circumstances did exist because a large crowd congregated in the roadway and blocked the entrance and exit to the debate forum.

The facts at bar are completely distinguishable from *Amnesty*, on which Plaintiff relies. *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113 (2d Cir. 2004). In *Amnesty*, protestors blocked access to an abortion clinic and passively resisted arrest. An abortion clinic can hardly be compared to the entrance point to the presidential debate site and the adjacent major roadway. At any moment, the presidential candidates may have had to have been immediately removed from the area because of a threat or actual attack. The demonstration of 200-300 people on Hempstead Turnpike would have directly blocked an escape route from the campus. On the contrary, no apparent reason exists for an immediate and forceful removal of "dozens" of protestors from an abortion clinic. *Id.* at 123-24 (notably, the *Amnesty* plaintiffs were arrested and the excessive force occurred in the course of their arrest; Court also noted that officers were forced to make "split second judgments . . . in tense, uncertain, and rapidly evolving circumstances" and their actions may have been reasonable).

Plaintiff's remaining *Monell* arguments are similarly unavailing. Plaintiff argues that because "policymakers" directed and planned the event security, including deployment of the mounted unit, that liability for Plaintiff's injuries allegedly caused by the mounted unit can be imputed to the municipality. However, for this *Monell* theory to succeed, the decision must be made by a "final policymaker," who in this case can only be Commissioner Mulvey. *See Davis v.*

8

*City of New York*, No. 02-9174, 2003 U.S. App. LEXIS 19650, at *6-7 (2d Cir. Sept. 23, 2003); Compl. ¶ 10. Although Commissioner Mulvey may have known that the mounted unit would be present at the debate, there is no indication from the pleadings that he ordered the unit to mobilize, nor is it plausible that this high ranking official would issue such an immediate operational order. Therefore, Plaintiff fails to establish any causal connection between Mulvey's knowledge of the mounted unit's presence and Plaintiff's injury allegedly resulting from the unit's mobilization. *See Jeffes v. Barnes*, 208 F.3d 49, 61 (2d Cir. 2000) (*Monell* causation is shown by the final policymaker committing or commanding the violation of Plaintiff's rights).

Plaintiff also argues that because he believes Defendant Officer Quagliano acted in contravention of accepted police practices that the County can be liable under a failure to train theory. Pl. Opp. at 21. A failure to train theory can only proceed where Plaintiff's allegations can show the "municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction." *Jackson v. County of Nassau*, 07-CV-245, 2010 U.S. Dist. LEXIS 5344, *37 (E.D.N.Y. Jan 22, 2010) (citation and internal quotations omitted). Plaintiff has not alleged any such failure. Additionally, "proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Id.* (quoting *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985)).

Here, Plaintiff makes the leap that because one police officer's conduct did not, in Plaintiff's belief, conform to accepted police practices, that the County obviously failed to train its officers. Pl. Opp. at 22. This argument fails under both *Iqbal's* pleading requirements and under *Monell* jurisprudence.

9

Finally, Plaintiff argues that his allegations do not constitute an "isolated" act because "the Mounted Unit horses moved aggressively against many demonstrators, and came into physical contact with more than one demonstrator. . . ." Pl. Opp. at 22. Just because this one event may potentially give rise to more than one person alleging a constitutional violation does not turn the single event into something more than an "isolated" act. Accordingly, Plaintiff's *Monell* theories are all inadequate, as a matter of law.

## **CONCLUSION**

For all of the foregoing reasons, Defendants respectfully requests that this Court enter an Order dismissing Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and for such other and further relief as this Court deems just and proper.

Dated: Mineola, New York
       February 11, 2010

                                        JOHN CIAMPOLI
                                        Nassau County Attorney Designee

                                By:     _____/s/_____
                                        Matthew Weinick
                                        Deputy County Attorney
                                        One West Street
                                        Mineola, New York 11501
                                        (516) 571-3011

10